[Crim. No. 15734. In Bank. Sept. 15, 1972.]

In re ROBERT CHARLES JORDAN, JR., on Habeas Corpus.

[Crim. No. 15755. In Bank. Sept. 15, 1972.]

In re EUGENE GRADY on Habeas Corpus.

**COUNSEL**

Alice Daniel, William Bennett Turner and Oscar Williams for Petitioner in No. 15734.

Paul N. Halvonik, Charles C. Marson, Hillel Chodos, A. L. Wirin, Fred Okrand, Laurence R. Sperber, Ephraim Margolin, Roland Brandel, Robert H. Mnookin and John J. Bartko as Amici Curiae on behalf of Petitioner in No. 15734.

Dennis R. Powell, Maurice R. Jourdane, David H. Kirkpatrick, Richard A. Gonzales and Neil M. Levy for Petitioner in No. 15755.

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, Doris H. Maier, Assistant Attorney General, Nelson P. Kempsky, Edward P. O'Brien, Charles R. B. Kirk and Derald E. Granberg, Deputy Attorneys General, for Respondent.

**OPINION**

**PETERS, J.**—Petitioners Robert Charles Jordan, Jr., an inmate at California Men's Colony at San Luis Obispo[1] convicted of violating Penal Code sections 207 (kidnaping), and 286 (sodomy), and Eugene Grady, an inmate at San Quentin Prison convicted of violating Penal Code section 470 (forgery), seek habeas corpus to challenge two Department of Corrections rules, Director's Rules 2404 and 2406, forbidding confidential correspondence by an inmate with his attorney. (Neither petitioner challenges the validity of his conviction.) Both petitions raise the same issues.

■ It is a well established rule that habeas corpus may be sought by one lawfully in custody for the purpose of vindicating rights to which he is entitled in confinement. (*In re Harrell,* 2 Cal.3d 675, 682 [87 Cal.Rptr. 504, 470 P.2d 640]; *In re Allison,* 66 Cal.2d 282, 285 [57 Cal.Rptr. 593, 425 P.2d 193]; *In re Riddle,* 57 Cal.2d 848, 851 [22 Cal.Rptr. 472, 372 P.2d 304].)

Director's Rules 2404 and 2406 (hereinafter sometimes referred to as D2404 and D2406) were amended in April 1971 to permit prison authorities to examine the contents of letters to members of the State Bar. Those rules presently provide as follows:

---

[1]At the time of filing this petition he was incarcerated in the segregation unit at Folsom State Prison.

"D2404. CONFIDENTIAL LETTERS. Inmates may address a sealed letter to the Governor of California, the Secretary of the Human Relations Agency, the Director of Corrections, the Deputy Director of Corrections, the administrative head of the State or Federal agency or board responsible for their custody or release, or to a judge. Such communications will not be censored. Inmates shall place their name and number on the outside of the envelope or the letter will be opened and returned.

"D2406. CENSORING. The institutional head may provide for the censoring of inmate correspondence and the inspection of all inmate packages as deemed necessary.

"Correspondence to a court shall not be prevented from leaving the institution for any reason. Correspondence to or from a member of the State Bar or holder of public office or received from those officials listed in D2404 may be opened by a designated employee only for the purpose of ascertaining whether the correspondence is from the designated official and for searching for contraband. The subject matter of such mail except that which may be excluded pursuant to Subdivision 4 of Penal Code Section 2600 shall be kept in strict confidence by the inspecting official."

Director's Rule 1205 (hereinafter referred to as D1205) defines contraband as follows:

"a. Anything not issued to you, sold to you through the canteen, permitted by the rules, or specifically authorized.

"b. Any property of another, except legal papers attached to a note from the owner, stating that he has lent them;

"c. Anything which is being misused;

"d. Any writings or voice recordings expressing inflammatory political, racial, religious or other views or beliefs when not in the immediate possession of the originator, or when the originator's possession is used to subvert prison discipline by display or circulation.

"e. Any writings or voice recordings evidencing an intent on the part of the possessor to engage in, join with others in engaging in, or encourage others to engage in, any form of violent conduct within the institution.

"f. Any writings or voice recordings constituting escape plans or plans for the production or acquisition of explosives or arms, possession of which is forbidden by law to inmates of institutions under the control of the Department of Corrections. Such material as may be contained in books, magazines, or newspapers which have been previously approved for receipt

by inmates is excepted. Contraband will be confiscated. Possession of contraband is grounds for disciplinary action. A disciplinary committee may turn any contraband over to the Adult Authority, regardless of the outcome of any disciplinary proceedings involving that contraband.

"Any writings or voice recordings not defined as contraband under this rule, but which, if circulated among other inmates, would in the judgment of the warden or superintendent tend to subvert prison order or discipline, may be placed in the inmate's property, to which he shall have access under supervision."

We hold that Director's Rules 2404 and 2406 are invalid because they deprive petitioners of the right guaranteed by section 2600, subdivision (2) of the California Penal Code, and because they abridge the statutory right to refuse to disclose the contents of a confidential communication between a client and his attorney pursuant to Evidence Code sections 952 and 954.

The traditional response of the courts to a review of prison regulations is that those rules are best left in control of the prison administration and departments of correction. This reluctance to review complaints involving prison rules and discipline is phrased in terms of the "hands-off" doctrine, a form of judicial self-restraint which is based upon the premise that courts should decline jurisdiction over prison matters in deference to administrative expertise, as well as the assumption that inmates do not possess the constitutional rights enjoyed by free citizens. (See *Ruffin* v. *The Commonwealth* (1871) 62 Va. (21 Gratt.) 790, 796.)

Neither of these premises justify continued abstention from subjecting those rules regulating the content of attorney-client correspondence to examination by the courts in light of legislative policy. We recognize that prison administrators are in the best position to control inmates but this control cannot violate statutory or constitutional rights.

Prior to 1968 there were no statutes which spoke specifically to the right of prison authorities to open and inspect correspondence of any kind to or from prison inmates. Instead, reasoning from the "civil death" statutes (Pen. Code, § 2600 et seq.), it was concluded that prison inmates had no privacy of any nature, and that all mail to and from inmates was subject to inspection. Mail to and from attorneys was considered to be subject to inspection in the same manner as all other mail. The only restriction placed upon prison authorities was that the right of inspection should not be used so as to unreasonably delay such communications. (*In re Ferguson,* 55 Cal.2d 663, 677 [12 Cal.Rptr. 753, 361 P.2d 417].)

In 1968 the Legislature acted to replace the concept of civil death "with statutory provisions seeking to insure that the civil rights of those convicted of crime be limited only in accordance with legitimate penal objectives." (*In re Harrell, supra,* 2 Cal.3d 675, 702.) The 1968 amendment according to *Harrell,* "constitutes a prison 'bill of rights' which sets forth four basic guarantees which are retained by persons sentenced to imprisonment," including the right to correspond confidentially with attorneys and public officials. (2 Cal.3d at p. 702.)

Penal Code section 2600 provides in pertinent part as follows: "A sentence of imprisonment in a state prison for any term suspends all the civil rights of the person so sentenced, and forfeits all public offices and all private trusts, authority, or power during such imprisonment. . . .

". . . . . . . . . . . . . . . . . . .

"This section shall be construed so as not to deprive such person of the following civil rights, in accordance with the laws of this state:

". . . . . . . . . . . . . . . . . .

"(2) To correspond, confidentially, with any member of the State Bar, or holder of public office, provided that the prison authorities may open and inspect such mail to search for contraband."

Prior to the 1968 amendments to section 2600 our court in *In re Ferguson, supra,* 55 Cal.2d 663, ruled that all incoming and outgoing letters to prisoners, including letters to and from attorneys, could be read by prison authorities. In effect, this ruling held that inmates had no right to correspond confidentially with anyone. The 1968 amendments to section 2600 evince a legislative reaction to older judicial concepts of civil death exemplified by *Ferguson.* Although the authors of section 2600, subdivision (2), opted for absolute confidentiality of attorney mail, a compromise was reached to ensure the exclusion of contraband from such correspondence and provision was made for inspection for contraband.

We recognize that section 2600, subdivision (2) is seemingly contradictory in that it gives confidentiality to attorney-client correspondence but then continues by giving prison authorities the right to open and inspect such correspondence to search for contraband. In this respect the Department of Corrections by establishing Director's Rules 2404 and 2406 was obviously attempting in good faith to reconcile the seeming contradiction.

Nevertheless, if the provision for inspection is interpreted to permit the reading of attorney correspondence, then the effect of section 2600, subdivision (2) is rendered nugatory. There is nothing confidential about a letter

which is read by a third party. The proviso to section 2600, subdivision (2), permitting searches for contraband must be interpreted in such a way as not to emasculate the primary objective of the section, i.e., to preserve the confidentiality of attorney mail. It follows that our inquiry must turn to what is deemed contraband.

The term "verbal contraband" used by the Department of Corrections is an ingenious effort to expand the reasonable (and legislative) meaning of a term to include what was never meant to be included within the meaning of "contraband" as used in Penal Code section 2600, subdivision (2). Encyclopaedia Britannica (1971 ed.) in a lengthy historical article refers only to "supplies, things, commodities, provisions, and goods." Webster's Seventh New Collegiate Dictionary (1970 ed.) defines contraband as "goods or merchandise whose importation, exportation or possession is forbidden; also; smuggled goods." The Winston Dictionary (1944 ed.) and the Random House Dictionary (1970 ed.) both define contraband in the same manner.

■ The Penal Code proscribes importation of certain articles, goods and other items to prisons,[2] and the term "contraband" in section 2600, subdivision (2), must be limited to physical matter in order to give effect to the provision for confidentiality of attorney mail.

A careful reading of D1205 relating to contraband does not limit the term to such items as drugs, weapons, or other items which are illegal per se; instead contraband may include "writings . . . expressing inflammatory political, racial, religious or other views or beliefs when not in the immediate possession of the originator, . . ." (D1205, subd. (d).) Thus, when the rule defining contraband is read together with the provision of section 2600, subdivision (2), authorizing inspection for contraband it is apparent that a letter to or from an attorney will be read to determine whether it contains a prohibited message. It is clear that the Legislature in authorizing inspections for contraband did not contemplate the censoring of attorney mail because of its content; such an interpretation would have patently defeated the confidentiality guaranteed by section 2600. We agree that the Department of Corrections has a legitimate interest in excluding from the prisons weapons, drugs, and other tangible items posing threats to prison security. But to limit the *subject matter* of inmate-attorney mail and to inspect such mail to ensure that the limitations are adhered to emasculates the confidentiality provision of section 2600.

■ The reading of inmates' mail to attorneys cannot be justified by

[2]See Penal Code sections 171a, 4573, 4573.5 and 4574.

reference to any valid prison need. As the court said in *Marsh* v. *Moore* (D.Mass. 1971) 325 F.Supp. 392, 395, "At most, there appears to be only a very remote and wholly speculative danger that an attorney, an officer of this court, would assist a prisoner in avoiding legitimate prison regulations."

A growing number of prison systems have recognized that permitting inmates confidential correspondence with attorneys presents no threat to prison security, and some have voluntarily abandoned their traditional practice of reading such mail. Prison inmates are now permitted to send sealed letters to attorneys under the rules followed in Alabama (*Lake* v. *Lee* (S.D.Ala. 1971) 329 F.Supp. 196); Maine (*Smith* v. *Robbins* (D.Me. 1971) 328 F.Supp. 162 (affd. 454 F.2d 696)); Massachusetts (*Nolan* v. *Fitzpatrick* (D.Mass. 1971) 326 F.Supp. 209); New Hampshire (*Conklin* v. *Hancock* (D.N.H. 1971) 334 F.Supp. 1119); New York (N.Y. Dept. of Correctional Services Memo ADM #79 Amended, April 7, 1971. Reading of incoming mail is also prohibited); Ohio (*Jones* v. *Wittenberg* (N.D.Ohio 1971) 330 F.Supp. 707); North Carolina (Rules and Policies Governing the Management and Conduct of Prisoners Under the Control of the State Prison System, rev. 1960); Pennsylvania (Admin. Directive #3, Dec. 1967; reading of incoming mail is also prohibited); Rhode Island (*Palmigiano* v. *Travisono* (D.R.I. 1970) 317 F.Supp. 776); Virginia (*Landman* v. *Royster* (E.D.Va. 1971) 333 F.Supp. 621); Washington (Office of Adult Corrections, Memo #70-5, Nov. 6, 1970), and in the federal prisons incoming mail is inspected but not read (*Wright* v. *McMann* (N.D.N.Y. 1970) 321 F.Supp. 127).

Counsel for petitioners also indicates that the states of Delaware, Indiana, Montana, Nevada, New Jersey, Oregon, and Vermont indicated in a survey as yet uncompleted that attorney mail is not read.

Furthermore, pursuant to court order, similar rules are now followed in Los Angeles County (*Buckley* v. *Pitchess,* No. C-5171, Super. Ct. L.A. Co., July 21, 1971), San Mateo County (*Payne* v. *Whitmore,* No. C-70, 2727 ACW (N.D.Cal. Jan. 14, 1971) 325 F.Supp. 1191), and Santa Clara County (*Batchelder* v. *Geary,* No. C-71-2017 (N.D.Cal. Nov. 12, 1971)).

It should be pointed out that any abuse which might be feared to result from uncensored correspondence could equally well be carried out during private visits. Yet prison officials have not found it necessary to monitor conversations between inmates and visitors in order to maintain prison security and discipline.[3] In this respect, no showing has been made by

---

[3]Monitoring of these visits is prohibited by Penal Code section 636 and a long line of cases firmly establishes the general principle that a prisoner has a right to

prison officials that such unmonitored communications have undermined prison security or discipline.

The fact that personal interviews are not subject to auditory monitoring emphasizes the illogicality of reading all mail to or from attorneys as the means of frustrating escape plans and avoiding violence. The determined conspirator who can hatch his plots during personal visits will be only slightly hindered, but not deterred, by a rule that hinders plotting by mail. The slight hindrance to conspiracy which is created by reading all mail does not justify invading the statutory rights of all.

The risk is small that attorneys will conspire in plots that threaten prison security. In all the exhibits submitted by respondent, gleaned from thousands of letters between attorneys and inmates, there was no evidence that such a risk is more than miniscule.

With respect to other violations of prison regulations respondent's exhibits indicate virtually no evidence of deliberate misconduct by any attorney with reason to believe his conduct was unlawful. While an attorney's ignorance of the law is surely no excuse, the prison's total failure to advise attorneys of the applicable mail regulations and Penal Code provision was a substantial factor leading to thoughtless and inadvertent violation. None of the attorneys accused by respondent of violating mail rules were ever advised that their conduct was improper. Respondent's unwillingness to try a simple safeguard like notification, which might have eliminated many of the "abuses," undermines the claim that there is no reasonable and effective alternative to *reading* confidential correspondence.

Methods such as a tactile examination of the envelope would fulfill the prison's interest in inspection. Or perhaps the inspection of a letter can be conducted in the presence of the inmate by holding the letter upside down thus preventing the official from reading its contents.[4] (We are

---

consult with his attorney in absolute privacy, which right is not abrogated by the legitimate interests of prison authorities in the administration of the institution. (*In re Qualls*, 58 Cal.App.2d 330 [136 P.2d 341]; *In re Snyder*, 62 Cal.App. 697 [217 P. 777]; see *In re Allison, supra*, 66 Cal.2d 282, 286-287.)

[4]Respondent states that "the most common violation of the prison rules relating to mail is an attorney enclosing a letter from an unapproved correspondent under cover of his own mail."

There is no reason that this abuse will continue once the attorneys are notified of the prison rules.

Respondent also points out that law firm stationery may be used by nonattorney staff and of course such correspondence is not entitled to the protection given by section 2600, subdivision (2) of the Penal Code. Therefore, it might be reasonable to require an attorney who wanted to invoke the protection accorded section 2600, subdivision (2) to sign his name on the outside of the envelope, signifying that the

informed that such are the practices of Los Angeles, Santa Clara, and San Mateo Counties.) In *Marsh* v. *Moore, supra,* 325 F.Supp. 392, 395, the court held that prison officials could do no more than examine prisoner-attorney correspondence with a fluoroscope or metal-detecting device and manually manipulate envelopes to determine if contraband were enclosed.

As a corollary, inmates must be permitted to send sealed letters to lawyers, the courts and holders of public office. Furthermore, prison officials need not read all letters in order to ensure that sealed letters are not sent to nonattorneys. A simple, more effective, alternative would be to check the addressee's name against the listings in the California Bar Directory.[5] Implicit to such an approach is that all attorneys corresponding with a prisoner be notified of those rules governing inmate correspondence.

Such procedures would fully comply with section 2600 of the Penal Code, assuring prison inmates their right of confidential correspondence, while giving prison authorities whatever protection they need against the enclosure of contraband by attorneys.

We conclude that though the Department of Corrections has a legitimate right to enact regulations which protect prison security, those regulations which prohibit confidential communications to attorneys are inconsistent with the intent of existing legislation. This conflict with section 2600, subdivision (2), alone requires that the rules be found invalid. (Gov. Code, § 11374; cf. *Ralphs Grocery Co.* v. *Reimel,* 69 Cal.2d 172, 174-175 [70 Cal.Rptr. 407, 444 P.2d 79]; *Morris* v. *Williams,* 67 Cal.2d 733, 737, 748 [63 Cal.Rptr. 689, 433 P.2d 697]; *Rosas* v. *Montgomery,* 10 Cal. App.3d 77, 88-89 [88 Cal.Rptr. 907].)

Director's Rules 2404 and 2406 also conflict with Evidence Code section 954 which provides in pertinent part that ". . . the client . . . has a privilege to refuse to disclose, and to prevent another from disclosing, a confidential communication between client and lawyer . . . ."

The privilege to prevent disclosure of a "confidential communication" between attorney and client furnished by Evidence Code section 954 is

---

enclosed letter was from him personally. Respondent's exhibits show no indication of deception by any attorney or his assistant; and there is no reason to believe that any attorney would sign his name on an envelope containing a letter from a non-lawyer assistant, or that any assistant would forge an attorney's signature.

[5] Petitioners inform us that the State Bar of California does not publish an official bar directory. However, "The California Lawyer's Diary and Manual," an unofficial directory, is prepared from the official State Bar lists. In addition, the State Bar will sell copies of its official lists to recipients it approves.

limited to communications which are in fact "confidential" within the definition of section 952 of the Evidence Code.[6] ■ But information transmitted between lawyer and client is not "confidential" within the meaning of section 952 if it has been knowingly disclosed to a third person whose presence is not required to advance the client's interest.[7] Thus, letters read by mailroom guards would not be "confidential" within the meaning of section 952 and the inmate could not claim the privilege.

In short, the mailroom guard could probably be required to testify, over the inmate's objection, to the contents of lawyer-client letters he had read. Respondent asserts that such evidence could be excluded by motion to suppress on the grounds that it had been improperly obtained. But that objection would be sustained only if the guard's interception and perusal were wrongful (see Comment—Law Revision Com., following § 954, West's Annotated Evidence Code), and of course the Attorney General argues that it would *not* be. Thus, if the guard is permitted by law to read attorney-client mail, he cannot be prevented from testifying to its contents. This result would seem unchanged by the director's rule that such communication be "kept in strict confidence," since the director is not authorized to rewrite the law of evidence.

It would obviously be contrary to the most fundamental considerations of fairness to permit forced disclosure of a litigant's confidential communications to his adversary when the inmate is engaged in some stage of criminal proceedings, or when the Department of Corrections or its agent is the actual or potential defendant in a case involving the legality of some condition of the inmate's confinement.

Petitioner points out that the purpose and necessities of the relation between a client and his attorney require, in many cases, on the part of the client, the fullest and freest disclosure to the attorney of the client's objects, motives, and actions. ■ Thus the protection of confidences

---

[6]Section 952 provides, "As used in this article, 'confidential communication between client and lawyer' means information transmitted between a client and his lawyer in the course of that relationship and in confidence by a means which, so far as the client is aware, discloses the information to no third persons other than those who are present to further the interest of the client in the consultation or those to whom disclosure is reasonably necessary for the transmission of the information or the accomplishment of the purpose for which the lawyer is consulted, and includes a legal opinion formed and the advice given by the lawyer in the course of that relationship."

[7]This reasoning was followed by the court in *People* v. *Cox,* 263 Cal.App.2d 176, 188 [69 Cal.Rptr. 410], in which the court found no error in permitting a jail matron whose presence had been obvious to testify to overheard conversations between attorney and client.

and secrets is not a rule of mere professional conduct, but instead involves public policies of paramount importance which are reflected in numerous statutes. Apart from Business and Professions Code section 6068, subdivision (e) which states, "It is the duty of an attorney: . . . (e) To maintain inviolate the confidence, and at every peril to himself to preserve the secrets, of his client," the Evidence Code as mentioned above provides for such confidential communications, and Penal Code section 636 makes it a felony for any person to eavesdrop or record "a conversation" between "a person who is in the physical custody of a law enforcement officer . . . and such person's attorney, . . ."

A long line of cases firmly establishes the general principle that a prisoner has a right to consult with his attorney in absolute privacy, notwithstanding the legitimate interests of prison authorities in the administration of jails. (*In re Qualls, supra,* 58 Cal.App.2d 330; *In re Snyder, supra,* 62 Cal.App. 697; *In re Rider,* 50 Cal.App. 797 [195 P. 965]; cf. *In re Allison, supra,* 66 Cal.2d 282, 286.)

We conclude that Director's Rules 2404 and 2406 are not only in conflict with section 2600, subdivision (2) of the Penal Code, but also are in violation of an inmate's right to confidential communication with his attorney protected by the Evidence Code.

Respondent is directed to cease enforcing Director's Rules 2404 and 2406 of the Department of Corrections to the extent they are inconsistent with the views expressed herein.

Wright, C. J., McComb, J., Tobriner, J., Mosk, J., Burke, J., and Sullivan, J., concurred.

Respondent's petition for a rehearing was denied October 25, 1972.