74 F.3d 977
 96 Cal. Daily Op. Serv. 627, 96 Daily Journal
D.A.R. 982
Brenda Lynne CARNELL, Plaintiff-Appellee,
v.
Cheryl GRIMM, Chris Sueo, Yamaguchi, Susan Dowsett, Jerry
Yoshit Kujiuji, Officer R. Noguchi, Officer P. Thorton,
Officer C.K. Flynn, City and County of Honolulu, Officer
Earl Penaroza, and John Does 1-10, Defendants-Appellants.
 No. 95-15102.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Nov. 8, 1995.
Decided Jan. 30, 1996.
 
 Hazel Beh and Daniel J. Kunkel, Honolulu, Hawai'i, for defendants-appellants.
 Jacob M. Merrill, Honolulu, Hawai'i, for plaintiff-appellee.
 Appeal from the United States District Court for the District of Hawai'i.
 Before: HUG, THOMPSON, and O'SCANNLAIN, Circuit Judges.
 HUG, Circuit Judge:
 
 
 1
 Brenda Lynne Carnell brought this 42 U.S.C. Sec. 1983 action against various law enforcement officers alleging violations of her constitutional rights when the officers arrested and detained her without first providing her with immediate medical and psychological treatment for her alleged rape. The officers moved for summary judgment on the ground of qualified immunity, which the district court denied in part. Two officers appealed. We affirm.
 
 I.
 
 2
 The factual background as set forth by the district court in relevant part is as follows: On November 1, 1992, Carnell celebrated Halloween at Honolulu's Restaurant Row. According to Carnell, she accepted a ride home from a man who raped her in his car in the vicinity of Restaurant Row. With Carnell still in his car, the man drove onto the Nimitz Highway, where he stopped at a stoplight. Carnell fled from the car, the man tried to prevent her escape, bystanders intervened, and Restaurant Row security called the police.
 
 
 3
 Responding to the call regarding the possible sexual assault at 4:30 a.m., Officer Flynn saw Carnell running down the middle of the road. Carnell contends that she was in the road at times, but was running on the side of the road when Officer Flynn arrived. According to Officer Flynn, he approached Carnell, asked her if she needed help, and told her to get out of the road. After she continued running in the road, he stopped her and took her to the sidewalk.
 
 
 4
 Other officers joined Officer Flynn, who asked Carnell what had happened. She responded with shouts of profanity and attempted to elude the officers and run back out onto the roadway. According to the officers, she also struggled with them, threatened them, and made sudden moves toward them. The officers arrested Carnell for disorderly conduct. Carnell contends that she told the officers she had been raped. The officers disagree.
 
 
 5
 Officer Flynn called a female officer to speak with Carnell, who responded to that officer with continued threats and profanity. The police took Carnell to Central Receiving at the Honolulu Police Station. There, Carnell refused to identify herself and could not be identified until a fingerprint technician could be called in to match her fingerprints.
 
 
 6
 On May 11, 1993, Carnell brought an action pursuant to 42 U.S.C. Sec. 1983, alleging various constitutional violations. She named several officers of the Honolulu Police Department and the City and County of Honolulu as defendants. Defendants brought a motion for summary judgment on October 11, 1994. On November 7, 1994, Carnell dismissed by stipulation all parties except Officers Flynn and Noguchi and the City and County of Honolulu. On December 6, 1994, the district court granted summary judgment for the City and County of Honolulu and the officers in their official capacities, concluding that they were entitled to immunity. It denied summary judgment for the officers in their individual capacities, concluding that the law was clearly established, but that a question of fact remained as to whether reasonable officers could have believed that their conduct was lawful in light of the circumstances. That question hinged on whether Carnell informed the officers that she had been raped, a fact that was disputed by the parties. This appeal followed.
 
 II.
 
 7
 We review the denial of qualified immunity de novo. Baker v. Racansky, 887 F.2d 183, 185 (9th Cir.1989). When a law enforcement officer asserts qualified immunity from liability, "the district court must determine whether, in light of clearly established principles governing the conduct in question, the officer objectively could have believed that his conduct was lawful." Act Up!/Portland v. Bagley, 988 F.2d 868, 871 (9th Cir.1993). This inquiry involves a two-step analysis: "1) Was the law governing the official's conduct clearly established? 2) Under that law, could a reasonable officer have believed the conduct was lawful?" Id. Whether the law was clearly established is a pure question of law for the court to decide. Mendoza v. Block, 27 F.3d 1357, 1360 (9th Cir.1994).
 
 
 8
 In its order, the district court rejected the defendants' qualified immunity defense. It concluded that "[T]he constitutional duty of public officials not to remain deliberately indifferent to serious medical needs, including psychological needs, of those in their custody is clearly established." Ultimately, however, the court held that because a genuine issue of material fact existed concerning the facts available to the defendants at the time of their arrest and detention of Carnell, it precluded the court from granting or denying the defendants' qualified immunity defense.
 
 III.
 
 9
 We must first address whether we have jurisdiction. If the denial of summary judgment was based on a fact-related dispute, then the defendants may not immediately appeal the fact-related district court determination. Johnson v. Jones, --- U.S. ----, 115 S.Ct. 2151, 2153, 132 L.Ed.2d 238 (1995). However, "[w]hen faced with an argument that the district court mistakenly identified clearly established law, the court of appeals can simply take, as given, the facts that the district court assumed when it denied summary judgment for that (purely legal) reason." Id. at ----, 115 S.Ct. at 2159. Because the defendants challenge the purely legal determination of whether the district court erred in determining that the law was clearly established, we have jurisdiction over this issue. Johnson, --- U.S. at ----, 115 S.Ct. at 2159; Mitchell v. Forsyth, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1986). However, insofar that a genuine issue of material fact exists for trial, namely whether Carnell informed the officers that she had been raped, we conclude that we do not have jurisdiction to address that issue. Johnson, --- U.S. at ----, 115 S.Ct. at 2159. And the resolution of that disputed issue of fact impacts the question whether reasonable officers could have believed that their conduct in arresting Carnell and booking her at the police station, rather than taking her to a clinic for medical attention, was lawful in light of the circumstances.
 
 IV.
 
 10
 The defendants initially contend that the court erred in determining that the right was clearly established. We disagree. The Eighth Amendment's proscription against cruel and unusual treatment is violated when officials remain deliberately indifferent to the serious medical needs of convicted prisoners. Estelle v. Gamble, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976). Because pretrial detainees are not convicted prisoners, the rights of those in police custody to receive medical treatment arise under the Due Process Clause of the Fourteenth Amendment. See Revere v. Massachusetts General Hosp., 463 U.S. 239, 244, 103 S.Ct. 2979, 2983, 77 L.Ed.2d 605 (1983). However, even though pretrial detainees claims "arise under the due process clause, the eighth amendment guarantees provide a minimum standard of care for determining [a prisoner's] rights as a pretrial detainee, including [the prisoner's] rights ... to medical care." Jones v. Johnson, 781 F.2d 769, 771 (9th Cir.1986) (emphasis added). In fact, the due process rights are at least as great as the Eighth Amendment protections available to a convicted prisoner. Revere, 463 U.S. at 244, 103 S.Ct. at 2983. Recently, we reaffirmed that "a prisoner's right, under the Eighth Amendment, to have prison officials not be 'deliberately indifferent to serious medical needs' " was clearly established in 1987 for purposes of an inmate's section 1983 claim against correctional officers for failing to remove him from his cell after he complained about fumes coming from the air supply ducts while the ducts were being worked on. Kelley v. Borg, 60 F.3d 664 (9th Cir.1995) (relying on Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976)). The above cases demonstrate that at the time of the alleged misconduct in this case, persons in custody had the established right to not have officials remain deliberately indifferent to their serious medical needs.
 
 
 11
 The defendants argue that the right in question was phrased too broadly, and instead should be whether arrested rape victims have a clearly established right to receive immediate medical and psychological treatment. We do not agree. In Kelley v. Borg, the defendant-officials made a similar argument, contending that the right at issue should be phrased: "[D]id plaintiff, after complaining about foul smells, have a clearly established right, then or now, for defendant correctional officers to immediately remove him from his cell in the Security Housing Unit during a lock down, when they first were required to at least inform their superior officer that they needed to remove an inmate, be it any inmate, from his cell?" Id. at 667. We disagreed, holding that the right at issue had already been particularized and that if the issue needed to be defined more narrowly, it would allow "Appellants, and future defendants, to define away all potential claims." Id. In this case, as in Kelley v. Borg, plaintiff's right has already been particularized. It deals specifically with the rights of persons in custody to receive medical treatment.
 
 V.
 
 12
 The second step of analysis for a qualified immunity determination is whether under the clearly established law a reasonable officer could have believed that his conduct was lawful. Act Up!/Portland, 988 F.2d at 871. A pivotal question of fact which will affect the resolution of this issue is whether Carnell informed the officers that she had been raped, a question of fact the district court repeatedly acknowledged that the parties disputed. Carnell maintains that the defendants knew that she had been raped, and that she so informed them, but that they failed to seek medical treatment for her. On the other hand, although it is undisputed that Carnell was disoriented and at times irrational, the officers maintain that the record does not support the contention that Carnell informed them that she had been "raped." There is some evidence that she informed them that she had been "sexually assaulted," however, Officers Flynn and Noguchi contend that she never told them about her assault. Furthermore, they argue that sexual assault encompasses less extreme acts than rape.
 
 
 13
 The district court determined that there existed a genuine issue of fact for trial and it based its denial of summary judgment on the existence of that factual issue. In Mitchell v. Forsyth, 472 U.S. 511, 530, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411 (1985), the Supreme Court held that a court of appeals has jurisdiction over an interlocutory appeal from a denial of a qualified immunity claim pursuant to the collateral order doctrine. However, the Supreme Court recently limited Mitchell, concluding that circuit courts do not have jurisdiction over every appeal of a denial of summary judgment based on qualified immunity. To the contrary, the Court stated that "compared with Mitchell, considerations of delay, comparative expertise of trial and appellate courts, and wise use of appellate resources, argue in favor of limiting interlocutory appeals of 'qualified immunity' matters to cases presenting more abstract issues of law." Johnson, --- U.S. at ----, 115 S.Ct. at 2158. "[Q]uestions about whether or not a record demonstrates a 'genuine' issue of fact for trial, if appealable, can consume inordinate amounts of appellate time." Id. Thus, the Court ultimately held that "a defendant, entitled to invoke a qualified immunity defense, may not appeal a district court's summary judgment order insofar as that order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial." Id. at ----, 115 S.Ct. at 2159. Therefore, under Johnson, we lack jurisdiction to review this issue.
 
 
 14
 AFFIRMED in part and DISMISSED for lack of jurisdiction in part.