83 F.3d 427
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Vincent MARQUEZ, Plaintiff-Appellee,
v.
D. MIRANDA, Correctional Officer; C. Wells, Correctional
Officer, Defendants-Appellants.
 No. 95-15054.
 United States Court of Appeals, Ninth Circuit.
 Submitted April 8, 1996.*
Decided April 25, 1996.
 
 Before: FERGUSON, D.W. NELSON, and FERNANDEZ, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 David Miranda and Carlos Wells are correctional officers at San Quentin Prison in California.[1] Vincent Marquez brought this civil rights action against them because, he claimed, they read his legal mail. The officers moved for summary judgment on the ground of qualified immunity, but the district court denied their motion. This appeal followed. We dismiss the appeal for lack of jurisdiction.
 
 BACKGROUND
 
 3
 The officers were assigned to investigate organized criminal activity in San Quentin. As part of their responsibilities, they would randomly search prisoners' cells seeking contraband, illegal messages, or evidence of other illegal activities. During those searches, they would sometimes look through prisoners' legal documents as well as other personal items. In a declaration in support of summary judgment, Miranda described the perusal of legal documents in the following way (we omit paragraph numbers):
 
 
 4
 When I conduct a cell search I search everything in the cell. If I discover legal materials including attorney client correspondence, I do not read the legal materials for content. I perform a tactile search of each page for physical contraband such as weapons stock or drugs. I also scan the documents for writing between typewritten lines. Often, inmates will attempt to conceal messages by lightly writing between the typewritten lines or even scratching messages in relief on the paper. I also scan documents for significant words that are often used by inmates as code to further criminal activities.
 
 
 5
 I do not ordinarily take notes, but may on occasion take notes while conducting a search. If I take notes, I record my thoughts on any significant information related to criminal activity, but do not copy documents word by word.
 
 
 6
 After receiving a tip that Marquez had been involved in recent gang activity, the officers searched his cell on at least two separate occasions. One search occurred on June 10, 1992. Marquez was not allowed to be present for that search. The second search occurred on August 10, 1992, after the officers gleaned information that Marquez had been stockpiling weapons. Marquez was not present during that search, but was in the area. During the search, Marquez told the officers that they should not review his legal materials. They assured him that they would not. During both searches the officers examined legal mail that Marquez kept in the original opened envelopes. The mail was specifically marked as "legal mail."
 
 
 7
 Marquez then brought this action in which he claimed that his rights under the First, Sixth, and Fourteenth Amendments to the United States Constitution were violated because the officers had read his legal mail. See 42 U.S.C. § 1983. The officers immediately moved to dismiss the complaint on the ground that they were entitled to qualified immunity. The district court denied that motion and they appealed. We ruled that they were not entitled to qualified immunity at that time because it was clearly established under both California and federal law that officials cannot read legal mail. Marquez v. Miranda, No. 93-15626 (9th Cir. Nov. 17, 1993) (Marquez I ). The case then returned to the district court, and in due course the officers filed the summary judgment motion with which we now deal. The district court denied that motion also, and this appeal followed.
 
 LACK OF JURISDICTION
 
 8
 The Supreme Court has held that "a district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment." Mitchell v. Forsyth, 472 U.S. 511, 530, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411 (1985). The fact that we have already passed upon the claim of qualified immunity once does not mean that we cannot hear a second appeal on the same issue. As the Supreme Court has said, there can be more than one interlocutory appeal on the issue of qualified immunity during the course of a proceeding. Behrens v. Pelletier, --- U.S. ----, ----, 116 S.Ct. 834, 839, 133 L.Ed.2d 773 (1996). Our cases to the contrary have been overruled. See, e.g., Nelson v. Silverman, 999 F.2d 417, 418 (9th Cir.1993).
 
 
 9
 However, we are presented with a more serious jurisdictional difficulty. The district court determined that it would not grant summary judgment because:
 
 
 10
 it is questionable whether defendants could reasonably have "scanned" "illicit" or newly-added information without reading the original content of the letter. This is a credibility determination best left to the trier of fact. The Court therefore finds that a genuine and material question of fact exists as to whether plaintiff's mail was read.
 
 
 11
 Of course, in Marquez I we decided that reading did violate clearly established law. That determination is the law of this case. See United States v. Schaff, 948 F.2d 501, 506 (9th Cir.1991). Therefore, the district court did not err when it decided that "reading" or not was a material fact issue. The result is that we have no jurisdiction over this interlocutory appeal even though it does involve issues of qualified immunity. See Johnson v. Jones, --- U.S. ----, ----, 115 S.Ct. 2151, 2159, --- L.Ed.2d ---- (1995); Armendariz v. Penman, 75 F.3d 1311, 1317-18 (9th Cir.1996) (en banc); Carnell v. Grimm, 74 F.3d 977, 979-80 (9th Cir.1996).
 
 
 12
 DISMISSED.
 
 FERNANDEZ, Circuit Judge, concurring:
 
 13
 I concur in all the majority says regarding our lack of jurisdiction over the issues of material fact presented by this case. However, I believe that the case presents an additional problem. After deciding that there were material fact issues, the district court went on to say that it really made no legal difference because scanning is just as illegal as reading and the officers admitted that they did scan the mail.
 
 
 14
 It is not at all clear to me that an issue which makes no legal difference can still be a material issue of fact. As the Supreme Court has said, "As to materiality, the substantive law will identify which facts are material." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Thus, it seems that the district court went on to say that the issue it identified was not really material. If that is so, we are presented with a legal issue after all. But I will lay that aside. I will also lay aside the point that even where part of a case involves a factual dispute over which we do not have jurisdiction, another part may present a dispute over which we do not have jurisdiction. See Armendariz v. Penman, 75 F.3d 1311, 1317-18 (9th Cir.1996) (en banc); Carnell v. Grimm, 74 F.3d 977, 979-80 (9th Cir.1996). I do so because a simple fact determination that the officers did read the materials would dispose of this case under Marquez I, and the district court appears to be prepared to submit that issue to the jury.
 
 
 15
 Nevertheless, because of the district court's strong intimation that reading and scanning amount to the same thing, I must say more on the subject. It is my hope that this will encourage the district court to allow a full development of the facts regarding what the officers really did so that this case will not make another unnecessary trip to this court.
 
 
 16
 It is well settled that governmental officials are cloaked with "a qualified immunity, shielding them from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." Anderson v. Creighton, 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987). As the Supreme Court has said:
 
 
 17
 Somewhat more concretely, whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the "objective legal reasonableness" of the action ... assessed in light of the legal rules that were "clearly established" at the time it was taken.
 
 
 18
 Id. (citations omitted).
 
 
 19
 There can be no doubt that prisoner legal mail is entitled to some measure of protection from examination. The cases have made that very clear. See, e.g., Casey v. Lewis, 43 F.3d 1261, 1269 (9th Cir.1994), cert. granted, --- U.S. ----, 115 S.Ct. 1997, 131 L.Ed.2d 999 (1995); cf. Wolff v. McDonnell, 418 U.S. 539, 575-77, 94 S.Ct. 2963, 2984-85, 41 L.Ed.2d 935 (1974). But the question courts must consider is the objective reasonableness of the officers' conduct, and that:
 
 
 20
 depends, as the Supreme Court has noted, on the level of generality at which the relevant legal rule is identified. Stated broadly enough, the whole concept of qualified immunity would be quite elusive. It would be little more than a will-o-the-wisp and would disappear as quickly. See Anderson v. Creighton, 483 U.S. at 639, 107 S.Ct. at 3038-39. Thus, before a right is considered to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." 483 U.S. at 640, 107 S.Ct. at 3039.
 
 
 21
 Los Angeles Police Protective League v. Gates, 907 F.2d 879, 887 (9th Cir.1990). See Hunter v. Bryant, 502 U.S. 224, 227, 112 S.Ct. 534, 536, 116 L.Ed.2d 589 (1991); Camarillo v. McCarthy, 998 F.2d 638, 639 (9th Cir.1993). We must, therefore, ask two questions when we decide whether the officers are entitled to qualified immunity against the claim that they violated Marquez's constitutional rights when they scanned his legal materials. Those are: "1) Was the law governing the official's conduct clearly established? 2) Under that law, could a reasonable officer have believed the conduct was lawful?" Act Up!/Portland v. Bagley, 988 F.2d 868, 871 (9th Cir.1993).
 
 
 22
 Our decision in Marquez I, which denied the officers qualified immunity, was made against the backdrop of long-existing authority that incoming and outgoing legal mail cannot be read by prison officials. See, e.g., Thongvanh v. Thalacker, 17 F.3d 256, 258-59 (8th Cir.1994); Lemon v. Dugger, 931 F.2d 1465, 1467 (11th Cir.1991); Davidson v. Scully, 694 F.2d 50, 52-53 (2d Cir.1982); Taylor v. Sterrett, 532 F.2d 462, 475 (5th Cir.1976); cf. Proudfoot v. Williams, 803 F.Supp. 1048, 1051-53 (E.D.Pa.1992) (mail in prisoner's possession, but addressed, stamped and sealed ready for deposit in mails). We have since made it clear that we agree with that line of authority. See Casey 43 F.3d at 1269. In those cases, the courts were concerned with the danger that free exchanges between prisoners and officials who could aid them would be discouraged or chilled if prisoner's legal mail were read.
 
 
 23
 The State of California, the officers' employer, has responded to the same concerns by providing that prisoners have a right "[t]o correspond, confidentially, with any member of the State Bar or holder of public office, provided that the prison authorities may open and inspect incoming mail to search for contraband." Cal. Penal Code § 2601(b); see also 15 Cal.Admin.Code § 3141. The California Supreme Court has enthusiastically agreed. See In re Jordan, 7 Cal.3d 930, 500 P.2d 873, 103 Cal.Rptr. 849 (1972). That court was well aware of the problems of prison administration but said, "The reading of inmates' mail to attorneys cannot be justified by reference to any valid prison need.... 'At most, there appears to be only a very remote and wholly speculative danger that an attorney, an officer of this court, would assist a prisoner in avoiding legitimate prison regulations.' " Id. at 936-37, 500 P.2d at 876; 103 Cal.Rptr. at 852 (citation omitted); see also In re Jordan, 12 Cal.3d 575, 526 P.2d 523, 116 Cal.Rptr. 371 (1974).
 
 
 24
 All of those cases focused upon incoming and outgoing legal mail rather than upon mail which has, perhaps long since, come to rest in the prisoner's hands. Materials which have left the mail system are different from mail en route. Mail en route is not likely to be a source of contraband. That is because we doubt that there is much chance that attorneys or government officials will be parties to nefarious plans hatched by prisoners. The extreme unlikelihood that they will be parties indicates that there is little or no reason to give the mail anything but the most cursory inspection. Mail that has come to rest in the hands of a prisoner is quite different. It is well known that prisoners are experts at turning seemingly innocuous items to illegal purposes. A letter, even one from a lawyer, could easily become a carrier for illegal prisoner messages, prohibited lists, drugs, and other improper material. As Miranda's affidavit pointed out, messages may be written in very lightly, or even scratched onto the surface of the page. An otherwise innocuous legal letter may be altered so that it conveys a coded message. No doubt the possibilities are only limited by the imagination of the inmates. This militates for the allowance of some scanning[1] of materials, even legal materials.
 
 
 25
 There certainly appears to be a valid and rational connection between scanning and the prison officials' objectives. There does not appear to be any other reasonable alternative. Moreover, prohibiting it would seem to leave a potent vehicle for harm in the hands of prisoners. They, on the other hand, can assure maximum protection of their constitutional rights by not altering legal letters and materials they receive. Then a quick scan will offer no excuse for an even closer look. All of this indicates that a scanning of opened legal materials which have come to rest in the hands of prisoners ought to be permitted. See Turner v. Safley, 482 U.S. 78, 89-90, 107 S.Ct. 2254, 2262, 96 L.Ed.2d 64 (1987).
 
 
 26
 Even so, the evidence presented to the district court was simply insufficient to allow that court, or us, to determine whether the officers actually read Marquez's legal materials. The district court questioned what Miranda meant when he said, for example, that he was scanning for significant words. Could he do that without reading the whole document? How would he pick out significant words? Must the words be highlighted, underlined, or made to stand out in some special way? And how is one to assess Miranda's statement that he takes notes but does not copy word for word? Are the exiguous statements in his affidavit just a way of enveloping the word "read" in a brume, or is he really just hastily looking over the document to spot obvious contraband? In short, the district court must ascertain the facts before it (or we) can decide the question of immunity.[2]
 
 
 27
 Marquez brought this action against the officers in September of 1992. In the ensuing three and a half years, the officers have had two qualified immunity trips to this court on very slim records--the first time on the basis of a motion to dismiss and this time on the basis of a four-page affidavit. Of course, they are entitled to string out the proceedings in this way. See Behrens v. Pelletier, --- U.S. ----, ----, 116 S.Ct. 834, 840-41, 133 L.Ed.2d 773 (1996). Will they come again? If so, it must be on a considerably more puissant factual record; not on one which consists of a single asthenic declaration. Indeed, it appears that it will have to be after a trial that fully develops the facts.
 
 
 28
 Therefore, I concur.
 
 
 
 *
 The panel finds this case appropriate for submission without oral argument pursuant to 9th Cir.R. 34-4 and Fed.R.App.P. 34(a)
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 We will hereafter refer to them collectively as "the officers."
 
 
 [1]
 Perhaps this is the place to mention that I am aware of the fact that "scan" is a woolly verb. It can mean "[t]o make an intense investigation of" or "to look through or over hastily." Webster's Third New International Dictionary, 2024 (1986). Or as another lexicon puts it, "scan" can mean "[t]o examine closely" or "[t]o look over quickly and systematically" or "[t]o look over or look through hastily...." The American Heritage Dictionary, 1610 (3d ed. 1992). In other words, it can be very much like reading or it can be a rather cursory glance, or it can be in between. That very woolyness militates for a careful factual development of this case
 
 
 [2]
 In so stating, I express no opinion on the question of whether officials can "read" materials which have come to rest in the hands of prisoners. That issue was already decided in Marquez I. Again, that decision is the law of this case