Filed 1/12/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>        Petitioner,<br><br>        v.<br><br>THE SUPERIOR COURT OF SANTA CRUZ COUNTY,<br><br>        Respondent;<br><br>JASON JOEL CORTEZ,<br><br>        Real Party in Interest. | No. H049188<br>(Santa Cruz<br>Super. Ct. No. 19CR06615) |

We must decide in this case whether a suspected inmate "kite"—a written message sent in violation of jail rules—is covered by the attorney-client privilege when it is contained in an envelope sent by an inmate to his attorney. We conclude that because the inmate here did not establish the kites are a confidential communication to his attorney, the attorney-client privilege does not apply. We will therefore issue a peremptory writ of mandate requiring the Superior Court to vacate its order finding otherwise.

## I. BACKGROUND

Real party in interest Jason Joel Cortez is an inmate at the Santa Cruz County Jail, awaiting trial on charges he committed murder in the jail for the benefit of a criminal street gang. The District Attorney alleges that while detained on another matter, Cortez and a codefendant fatally strangled their cellmate, German Carrillo.

We take the following from the record of proceedings in connection with a defense motion to prevent disclosure of "kites" Cortez attempted to mail from jail to his

attorney. According to pleadings filed in opposition to an in camera examination of the writings at issue, a kite is a clandestine note usually written on a small piece of paper in very small print and used by an inmate to communicate with another person either inside or outside of the jail. Testimony in the record describes that kites are rolled up and often wrapped in plastic to minimize their size and to facilitate concealment in an inmate's clothing, mouth or rectum. Kites present a jail security risk because inmates may use them to communicate about smuggling contraband or to plan assaults on other inmates.

About a month before the preliminary hearing in the murder case, a correctional officer at the jail intercepted what he believed to be kites in outgoing mail sent by Cortez. The officer testified that jail personnel routinely search outgoing inmate mail for contraband. Mail from an inmate to an attorney is also searched, but a special procedure is used to preserve confidentiality. The legal mail is opened in front of the inmate who sent it; the envelope's contents are visually inspected but any written communication is not read. Here, the correctional officer described that he was inspecting outgoing mail when he encountered an envelope from Cortez addressed to his attorney. As soon as the officer touched the envelope he noticed it was "a little heavier towards the center" with a "bulk in the center" of it. It smelled of feces, which indicated to the officer that it did not contain regular mail. Suspecting the envelope contained contraband, he opened it to see what was inside. He did not do so in front of Cortez because he did not believe the envelope actually contained legal mail.

When the officer opened the envelope, he found another envelope fashioned from the lined yellow paper sold at the jail commissary. The fecal odor was noticeably stronger. On the yellow envelope was written "do not read." The officer opened it and found what appeared to be multiple kites. Each kite was made from differently colored paper and each had different writing, leading the officer to believe they were written by different people. The handwriting on the kites was not the same as the writing on the envelope. The officer found another envelope from Cortez addressed to his attorney and

2

inside found the same kind of handmade yellow envelope containing more kites that smelled of feces. Written on the exterior envelope was "please keep this for [] the future do not read please." The officer unfolded some of the kites and read them. He informed his supervisor about what he had found.

When the attorney for Cortez's codefendant learned jail staff had intercepted the envelopes, he moved to continue the preliminary hearing. The motion was supported by a declaration from counsel noting, among other grounds, "a significant discovery issue that this court needs to resolve … an envelope emanating from [Cortez], who is housed in the Santa Cruz County Jail, which purportedly was going to his attorney, was intercepted by personnel at the Santa Cruz County Jail. [¶…¶] It appears that this court will need to resolve a discovery issue pertaining to the above-mentioned materials[.]"

The magistrate to whom the matter was assigned for preliminary hearing continued the hearing and indicated she would consider examining the intercepted materials in camera to determine whether they should be disclosed to the prosecution. Cortez and his codefendant objected to an in camera examination, and further objected to disclosure of the materials on the ground they are communications between Cortez and his attorney protected by the attorney-client privilege.

The magistrate (Judge Cogliati) heard testimony from the correctional officer who found the suspected kites, then conducted an in camera examination over the defendants' objection. Judge Cogliati, wearing gloves, inspected the envelopes and their contents. She announced her findings on the record: The messages have "the teeny tiny writing that we've all come to know as indicative of a gang related kite. Because of that I did not read the substance of these kites. [¶] I mostly reviewed who they were addressed to because each of them did contain at the top a to and a from. And none of them were addressed to [Cortez's attorney]. None of them were—appeared to even be written by Mr. Cortez. They may have been because there were some perhaps nicknames. But there were some that were clearly from individuals other than Mr. Cortez because the actual

3

name was used as the from. [¶] So based on my review of those kites, I do not find the attorney-client privilege applies for all the reasons I already stated. [¶] And at this point I'm going to order their disclosure to the People."

Cortez petitioned the Superior Court for a writ of mandate, arguing that the finding of no attorney-client privilege was clearly erroneous. The petition was considered by Judge Burdick, who granted the requested relief. Judge Burdick ruled the prior decision "which was going to permit discovery of these documents to the prosecution, I think does at that point, run afoul of the attorney-client privilege." The result was an order that the suspected kites be released to Cortez's counsel and protected from disclosure to the prosecution based on attorney-client privilege.

The Santa Cruz County District Attorney petitioned this court for a writ of mandate vacating Judge Burdick's decision that the documents are privileged. We temporarily stayed the order releasing the documents to defense counsel and issued an order to show cause why the relief requested here should not be granted.

## II. DISCUSSION

The attorney-client privilege prevents disclosure of confidential communications between client and lawyer. (*Roberts v. City of Palmdale* (1993) 5 Cal.4th 363, 371.) The privilege allows a client to refuse to disclose—and prevent anyone else from disclosing—communications with a lawyer that are intended to be confidential. (Evid. Code, § 954.) The party claiming the privilege must establish the information in question is a confidential communication made in the course of an attorney-client relationship. (*Costco Wholesale Corp. v. Superior Court* (2009) 47 Cal.4th 725, 733 (*Costco Wholesale*).) Only if that threshold showing is made is the communication presumptively privileged, meaning it cannot be ordered disclosed unless the opposing party shows the privilege does not apply for other reasons. (*Ibid.*) "Confidential communication" is defined by statute. Evidence Code section 952 provides: " 'confidential communication between client and lawyer' means information transmitted between a client and his or her

4

lawyer in the course of that relationship and in confidence by a means which, so far as the client is aware, discloses the information to no third persons other than those who are present to further the interest of the client in the consultation or those to whom disclosure is reasonably necessary for the transmission of the information or the accomplishment of the purpose for which the lawyer is consulted."

Crucially to this case, "[t]he attorney-client privilege only protects communications between attorney and client made for the purpose of seeking or delivering the attorney's legal advice or representation." (*Los Angeles County Bd. of Supervisors v. Superior Court* (2016) 2 Cal.5th 282, 293 (*Board of Supervisors*).) Put differently, "the privilege does not apply to every single communication transmitted confidentially between lawyer and client. Rather, the heartland of the privilege protects those communications that bear some relationship to the attorney's provision of legal consultation." (*Id*. at p. 294.) "[T]he Evidence Code's definition of the privilege concerns not only the manner in which information is transmitted, but the nature of the communication." (*Ibid*.) Accordingly, "not all communications between attorney and client become privileged solely by virtue of the mode of communication (confidential versus not)." (*Id*. at p. 296.)

We review for substantial evidence a court's factual findings made in deciding whether documents constitute a confidential attorney-client communication. (*Costco Wholesale*, *supra*, 47 Cal.4th 725, 733; see also *People v. Gionis* (1995) 9 Cal.4th 1196, 1208, quoting *D.I. Chadbourne, Inc. v. Superior Court* (1964) 60 Cal.2nd 723, 729 ["When the facts, or reasonable inferences from the facts, shown in support of or in opposition to the claim of privilege are in conflict, the determination of whether the evidence supports one conclusion or the other is for the trial court, and a reviewing court may not disturb such finding if there is any substantial evidence to support it."].)

In the initial privilege determination, Judge Cogliati made several factual findings that led to the conclusion the materials are not confidential communications from Cortez

to his attorney: (1) the rolled up pieces of paper have "teeny tiny writing" consistent with the kites used by gang member inmates to communicate with each other; (2) the kites themselves are all addressed to people other than Cortez's attorney; and (3) all or most of the kites appear to have originated from people other than Cortez. Based on those findings, Judge Cogliati concluded the kites are not confidential attorney-client communications, and as a result ruled the attorney-client privilege does not apply.

Judge Cogliati's factual findings are supported by substantial evidence, namely, the testimony of the correctional officer who discovered the kites describing them essentially the same way. Cortez does not argue otherwise. He instead asserts that because of another fact—the kites were contained in an envelope addressed to his attorney—the attorney-client privilege presumptively applies, and it was up to the prosecution as the opponent of the privilege claim to prove otherwise. But putting something in an envelope addressed to an attorney does not automatically render the item privileged. (See *People v. Gutierrez* (2009) 45 Cal.4th 789, 816 [Gang member kites not privileged merely because defendant intended to show them to his attorney: "the intent to show a document to a lawyer does not transform a document into one covered by the attorney-client privilege."].) The controlling question is whether a document is in fact a confidential communication to an attorney, which is governed by the nature of the document not merely its container.

Because the testimony of the correctional officer suggested the envelopes contained writings that were not confidential attorney-client communications and Cortez failed to satisfy his threshold burden to support the exercise of attorney-client privilege, the magistrate appropriately examined the documents in camera to ascertain what they are. (See *Cornish v. Superior Court* (1989) 209 Cal.App.3d 467, 480 [where an exception to the privilege depends on content, court may require disclosure in camera in making its ruling]; see also *Costco Wholesale*, *supra*, 47 Cal.4th at pp. 739–740; Evid. Code § 915.) After examining the documents, Judge Cogliati found they are consistent

with the kites gang members use to communicate with other members and noted they are themselves addressed to people other than Cortez's attorney. Those findings support the conclusion that the small, handwritten notes smelling of feces inside the yellow interior envelope are not confidential communications to an attorney, but rather were written to be read by others. Cortez's assertion of privilege based merely on his use of the jail's legal-mail channel did not satisfy his threshold burden to present preliminary facts supporting its application. A conclusory assertion of privilege is insufficient to make the required prima facie showing. Before reviewing the materials in camera, the magistrate was presented with the examining officer's testimony which included his visual and olfactory observations indicating the kites were not intended to be a confidential attorney-client communication. Absent additional evidence presented by Cortez to demonstrate that (despite their characteristics suggesting otherwise) the kites were sent to his counsel for the purpose of seeking legal advice, the privilege claim fails.

We therefore conclude the initial ruling from Judge Cogliati correctly determined the documents are not privileged because they are not a confidential communication to an attorney. Judge Burdick's order setting aside that ruling incorrectly found the attorney-client privilege applied even in the absence of the required threshold showing.

We emphasize that in evaluating whether the attorney-client privilege applies to the documents at issue here, it is irrelevant whether the jail violated any applicable statute or regulation by opening the envelope and examining its contents outside Cortez's presence. (See Pen. Code § 2601, subd. (b) [providing that inmates have the right to confidential correspondence]; (Cal. Code Regs., tit. 15, § 3142 [requiring that confidential mail be opened in the presence of the inmate]; see also *In re Jordan* (1972) 7 Cal.3d 930, 934 [regulation allowing prison staff to open and read any outgoing mail violated inmate right to confidential communication].) Even if the jail violated the regulation requiring legal mail to be opened in the inmate's presence, the remedy would not automatically render everything inside the envelope—including communications

7

originally intended for people other than an attorney—subject to the attorney-client privilege. The only question presented in this petition is whether the attorney-client privilege applies. We accordingly express no opinion about whether the jail violated any statute or regulation in opening the envelopes Cortez addressed to his attorney. (How the writings came to be disclosed would be important if they *were* confidential attorney-client communications and a waiver of the privilege were being claimed. But that is not the situation presented here.)

### III.   DISPOSITION

Let a peremptory writ of mandate issue, directing the Santa Cruz County Superior Court to vacate its April 16, 2021 order releasing the documents held by the court to defense counsel. The Superior Court is further directed to reinstate the order dated October 8, 2020, finding the attorney-client privilege inapplicable and allowing disclosure of the documents to the prosecution.

8

_____

Grover, Acting P. J.

**WE CONCUR:**

_____

Danner, J.

_____

Lie, J.

H049188 - *The People v. Superior Court*

| | |
|---|---|
| Trial Court: | Santa Clara County Superior Court<br>Case No.: 19CR06615 |
| Trial Judge: | Hon. Paul P. Burdick |
| Attorneys for Petitioner The People | Jeffrey S. Rosell<br>  District Attorney<br>Tara L. George<br>  Chief Deputy District Attorney<br>Lauren Apter<br>  Assistant District Attorney |
| Attorneys for Respondent Santa Cruz County Superior Court | No appearance made |
| Attorneys for Real Party in Interest Jason Joel Cortez | Jeanine G. Strong<br>  Strong Appellate Law<br>Zachariah Schwarzbach Zach D.<br>  Schwarzbach, Attorney at Law Inc. |