[Crim. No. 1016. First Appellate District, Division Two.—February 17, 1922.]

THE PEOPLE, Respondent, v. GEORGE RITTENHOUSE, Appellant.

[1] CRIMINAL LAW—EMBEZZLEMENT—ERRONEOUS CREDIT BY BANK TO DEPOSITOR—APPROPRIATION BY EMPLOYEE.—Where a bank through error credits a depositor twice with a given deposit, such depositor is liable to return to the bank the amount thus credited by mistake, and where an employee of such depositor, by the unauthorized use of certain checks of his employer, draws that sum from the bank and appropriates it to his own use he is guilty of embezzlement.

[2] ID.—FORGERY—SUBSEQUENT UNAUTHORIZED PERSONAL DEBIT ENTRY IN BOOKS.—Where a person obtains money by means of a forged check drawn on the company by which he is employed, he cannot absolve himself from criminal liability by thereafter surreptitiously making an unauthorized entry on the books of the company, charging himself with the amount of the check.

[3] ID.—UNSIGNED DOCUMENT FOUND IN DEFENDANT'S CELL—ADMISSION IN EVIDENCE.—In a prosecution for embezzlement, it is not error to admit in evidence a document found in the cell occupied by the defendant while in the county jail, not in the form of a letter and not addressed to anyone, but in which the defendant enumerated different matters, such as where there was an absence of proof or difficulty connected with proving the elements of the crime charged against him, which he conceived would work to his advantage.

[4] ID.—DISMISSAL OF INDICTMENT BEFORE TRIAL—SUBSTITUTION OF NEW INDICTMENT — LACK OF PREJUDICE — TWICE IN JEOPARDY.— The dismissal of an indictment, on motion of the district attorney, after the defendant has pleaded "not guilty" but before the day set for trial, the motion having been made upon the ground and for the reason that the grand jury had found another indictment against the defendant, upon which the district attorney desired to bring the defendant to trial because he considered that it better stated the facts necessary to constitute the offense charged against the defendant, was not prejudicial to the defendant; and the trial of the defendant upon this latter indictment did not justify a plea of twice in jeopardy.

APPEAL from a judgment of the Superior Court of Fresno County. J. E. Woolley, Judge. Affirmed.

The facts are stated in the opinion of the court.

Richard Kittrelle and Paul W. Schenck for Appellant.

U. S. Webb, Attorney-General, John H. Riordan, Deputy Attorney-General, B. W. Gearhart, District Attorney, and Philip Conley, Deputy District Attorney, for Respondent.

LANGDON, P. J.—This appeal is taken from a judgment of conviction of the crime of embezzlement and of the crime of forgery, charged in the third and fourth counts of an indictment against the defendant, which indictment contained five counts. Appellant was found ''not guilty'' on count one and the district attorney, prior to the trial, dismissed as to counts two and five.

Appellant contends that the evidence is insufficient to sustain the verdict. The defendant, Rittenhouse, in July, 1920, was employed as a bookkeeper for the Valley Oil Company, in Fresno, California. Among his duties were those of keeping the books of the company and of signing checks of the company, jointly with the president, Edward L. Tobin. The Valley Oil Company kept a checking account in the Bank & Trust Company of Central California, in Fresno, which bank, a short time prior to the date of the alleged commission of the crimes herein considered, had changed its name to the Fidelity Trust & Savings Bank. Mr. Tobin, as president of the Valley Oil Company, secured a loan from this bank in the sum of $2,500 and had it deposited in the bank to the credit of the Valley Oil Company. By some mistake occurring during the transfer of the bank's business from the old name to its new name, the bank inadvertently credited the Valley Oil Company with two deposits of $2,500 each. The second deposit was credited on May 12, 1920, the day after the first deposit was credited. The defendant was in a position to become aware of this error and it afforded him an opportunity for embezzlement. It was shown by the bank's ledger sheet that on July 29, 1920, $600 was drawn from the company's account; on the following day, the ledger shows that $1,900 was withdrawn, making a total of $2,500, the amount of the duplicate deposit. This amount was checked out without the consent of the president. The company was a small one and was virtually controlled by its president, Mr. Tobin. All checks required the signatures of Tobin as president

and of the defendant as secretary. It appears from the evidence that on some occasions Tobin signed his name as president to certain blank checks to be used in the business. The evidence was conflicting as to whether or not Tobin, as president, had left checks signed in blank which the defendant might have used for securing this $1,900 from the bank. That question was, therefore, submitted to the jury as to whether or not they believed that the defendant had forged Tobin's name to the $1,900 check or had utilized one of the checks which had been signed in blank by Tobin and intrusted to the defendant for company purposes. The jury determined that the defendant was not guilty of forgery, but found him guilty of embezzlement of $1,900, so that question drops out of this case. True, the prosecution was unable to produce the two checks, one for $600 and the other for $1,900, but the inference from the evidence is very strong, indeed compelling, that the defendant destroyed these checks. The card retained by the bank which was signed by the person obtaining the canceled checks of the company was produced. It contained two signatures of "Valley Oil Company," one on July 20, 1920, and one on August 2, 1920. The handwriting expert at the trial identified these signatures as the handwriting of the defendant. When the bank discovered the mistake and went to check up the matter with the Valley Oil Company, the defendant had left his employment and was not to be found, and the two checks which would have been evidence against the defendant had also disappeared. In the light of these facts and of other evidence of defendant's guilt contained in the record, the inference that he secreted or destroyed these checks as a part of his scheme and to avoid detection is not unjustified.

The defendant is connected up with the cashing of the $1,900 check by the following facts: Miss Frances Blair, an employee of the bank, testified that on July 30, 1920, a man purchased from her, in the discharge of her duties, nineteen traveler's checks of the denomination of $100 each; that this man signed his name to said checks, as was required at the time of purchase, as "George Rittenhouse," and gave, in payment for the same, a check of the Valley Oil Company, bearing the names of Tobin and Rittenhouse, as president and secretary, respectively, for $1,900; that he stated

that he needed these traveler's checks to go on a business trip for the company. These checks were cashed in various places and were countersigned "George Rittenhouse." The defendant stipulated that such signatures, appearing twice on each of said checks, were signatures of the defendant. We can perceive no gap in the proof. The employee of the bank testified to the purchase of $1,900 of traveler's checks, countersigned by "George Rittenhouse" in her presence. These checks were cashed by the defendant and returned to the bank in the usual course of business and produced at the trial. It is stipulated that the signatures countersigned thereon are signatures of the defendant. He, then, purchased these checks from the bank, and according to the testimony of the bank employee, he gave in payment therefor a check of the Valley Oil Company signed with the names of Tobin and himself. He had no authority to do this and Tobin testified that he never signed such a check. The defendant appropriated the proceeds of this Valley Oil Company check, which were exchanged for the traveler's checks, to his own use.

[1] It is argued that as the $2,500 appropriated by the defendant was erroneously credited by the bank to the Oil Company's account, the Oil Company has not suffered a loss, and, therefore, the defendant has not embezzled the money. There is no merit in this contention. Under the facts in evidence, as between the bank and the Oil Company, the Oil Company would be liable to return to the bank the amount credited under a mistake, and is liable to the bank therefor. Of course, if it could be proven that the defendant had forged the signature of Tobin, the situation might be otherwise; but, under the finding made here by the jury, there was no forgery and the Oil Company is the loser by the amount embezzled, at least so far as any issue in the present case is concerned.

With the reference to the count for forgery, upon which the defendant was found guilty, there was introduced in evidence a check for $70.03, payable to the defendant's order and signed with the names of Tobin and Rittenhouse, as president and secretary, respectively. Tobin testified that he had not signed this check and had not authorized his name to be signed thereto, and his signature which is brought before this court in the record on appeal, for com-

parison with the forged signature, amply bears out this testimony. The handwriting expert declared that the forged signature was in the handwriting of Rittenhouse. [2] Tobin testified that some time after Rittenhouse disappeared, he went back to the office of the company at night and made an entry in the books charging himself with the amount of this check. Appellant relies on this entry as negativing an intent to defraud. The charge was not a proper one, nor one that defendant was authorized to make on behalf of the company. As the jury found that the amount was secured on a forged check, the entry which Rittenhouse later made charging himself with the same on the books of the company cannot in any way save the situation as to him. It is unthinkable that a man forging a check and receiving the money thereon should absolve himself from criminal liability by making an unauthorized entry on the books of the company on whose funds the check had been drawn, charging himself with this amount. As well might a burglar leave behind him his note for the amount of his booty.

[3] It is asserted that the trial court erred in admitting in evidence a certain document found in the cell occupied by the defendant while in the county jail at Fresno. After the prisoner had been removed from his cell, the paper was found by the sheriff. The writing is not in the form of a letter and is not addressed to anyone. It is an enumeration of sixteen different matters, where there is an absence of proof or difficulty connected with proving the elements of the crimes charged against the defendant, which he conceived would work to his advantage. Nothing could be more eloquent of the guilt of the defendant than this expression of his carefully thought-out and many-sided scheme for circumventing justice. Among other circumstances advantageous to himself, he enumerates the fact that the prosecution will find the $600 and $1,900 checks missing and that defendant cannot be identified as the man who cashed them. Counsel for defendant offered to prove that this document was intended as a letter to defendant's counsel and, as such, was privileged. The rule which appellant invokes is well settled that an attorney of a party cannot be compelled to disclose papers delivered or communications made to him, or letters or entries made by him in that capacity. (1 Green-

56 Cal. App.—35

leaf on Evidence, 16th ed., p. 373, sec. 237.) But we find no authority for the extension of the privilege to communications or letters which are intended by the party to be later delivered or communicated to his attorney. We think such an extension of the rule would be against public policy, as if it were so extended, it would only be necessary for a party to state that any incriminating documents, etc., discovered by third parties or officers of the law were intended for transmission to his attorney in order to tie the hands of the state. This situation comes rather within the reason of the rule that where a third person not within the confidential relation overhears the communications between attorney and client, he may disclose what he hears. (*State* v. *Perry,* 4 Idaho, 24 [38 Pac. 658, 659] ; *Basye* v. *State,* 45 Neb. 261, 283 [63 N. W. 811] ; *Hoy* v. *Morris,* 13 Gray (Mass.), 519 [74 Am. Dec. 650] ; *Whiting* v. *Barney et al.,* 30 N. Y. 330 [86 Am. Dec. 385].)

[4] The only other point urged by appellant is that the defendant has been twice put in jeopardy and that this plea warranted a judgment in his favor in the present action. The claim is based upon the fact that on March 24, 1921, the grand jury of Fresno County returned and filed an amended indictment against the defendant, numbered 4565. At the time this amended indictment was filed, the defendant had not pleaded to the original indictment and he does not complain of this step in the proceedings. However, thereafter, on March 24, 1922, a demurrer to the amended indictment was interposed and overruled and the defendant pleaded "not guilty" to each and every count of the indictment. The cause was set for trial on June 15, 1921. On June 14, on motion of the district attorney, the trial court dismissed said indictment number 4565 and the minute entry upon the records of the court recites that "the district attorney came into open court and now moves the court for an order dismissing the amended indictment against defendant, George Rittenhouse, number 4565, on the ground and for the reason that the grand jury of the county of Fresno has found another indictment against the said George Rittenhouse, number 4645, Department No. 1, upon which indictment the district attorney desires to bring said defendant to trial; whereupon the court now orders that said action be, and it is hereby, dismissed on the grounds men-

tioned and in accordance with the motion of the district attorney.''

Thereafter, the grand jury filed indictment No. 4645, upon which the defendant was convicted. We see no merit in appellant's position on this point. The action taken by the court was in accordance with section 1385 of the Penal Code. The reason for the dismissal of the indictment is stated in the order. Section 1387 of the Penal Code provides that such a dismissal is not a bar to a further prosecution in the case of a felony. But appellant contends that the reason given in the order for the dismissal of the indictment does not indicate that the dismissal was in furtherance of justice. Assuredly, it is in the interest of justice to have indictments drawn as carefully and correctly as possible, and in accordance with the facts, so that trials may be conducted regularly and without error. It is perfectly apparent from the record that the district attorney desired to try the defendant upon the last indictment because he considered that it better stated the facts necessary to constitute the offenses charged against the defendant, and more accurately stated the facts which could be shown by the evidence. The defendant refused to put in evidence the entire content of the first amended indictment, but read into the record one count therefrom. The district attorney admitted and the record confirms the statement that the count so read from the first amended indictment relates to the same transaction involved in one of the counts in the indictment upon which the defendant was tried; but the facts regarding such transaction are stated in the two indictments in different ways so as to charge different offenses, and the other counts of the two indictments, according to the statement of the district attorney, which is all that is before us, vary in statement of facts and in the offenses charged thereby. Under these circumstances, we consider it desirable and in furtherance of justice that the first indictment against the defendant be dismissed after it became apparent to the district attorney that one more in accordance with the facts could be filed. No possible prejudice could result to the defendant from this procedure under the circumstances of this case. Furthermore, defendant was not twice in jeopardy, as his trial was not begun and no jury had been im-

paneled at the time the first amended indictment against him was dismissed.

The judgment is affirmed.

Sturtevant, J., and Nourse, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 17, 1922.

All the Justices concurred except Sloane, J., and Shurtleff, J., who were absent.

Waste, J., was absent and Richards, J., *pro tem.*, was acting.