[No. F044381. Fifth Dist. Apr. 11, 2005.]

THE PEOPLE, Plaintiff and Respondent, v.
RAYMOND GUADALUPE URBANO, Defendant and Appellant.

COUNSEL

Richard Power, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Mary Jo Graves, Assistant Attorney General, Brian Alvarez and Connie A. Proctor, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

GOMES, J.—

## INTRODUCTION

Appellant Raymond Guadalupe Urbano argues that the admission in evidence at trial of a comment and a gesture he made to his attorney in the jury box of his preliminary hearing courtroom while court was not in session violated the attorney-client privilege. He argues that the court's denial without jury findings of his motions to strike both his strike prior and his criminal street gang enhancement and the court's imposition without jury findings of an additional restitution fine and an additional parole revocation restitution fine violate *Blakely v. Washington* (2004) 542 U.S. 296 [159 L.Ed.2d 403, 124 S.Ct. 2531] (*Blakely*), that the fines are constitutionally excessive, and that his attorney rendered ineffective assistance of counsel by failing to object. We will reject each of his arguments and affirm the judgment.

## FACTS

One evening at a bar, Urbano and James Bailey told Kevin Ramsey they were Fresno Bulldogs and lifted their shirts to show off gang tattoos on their

abdomens. Eric Green, sitting next to Ramsey at the bar, said jokingly, "[A]re you running the kids off again[?]" Urbano confronted Green "like, you know, you want some." Green said, "[L]eave me alone, don't bother me." Urbano and Bailey barked at him.

Aware he was in a vulnerable part of the bar, Green stood up and started to walk away, but Urbano and Bailey attacked him. As soon as he hit the floor, Urbano kicked him in the head, time after time, with "everything he's got." For weeks, he suffered pain from the injuries Urbano inflicted. The attack happened so fast Green could not identify anyone. Ramsey identified Urbano as the perpetrator, however, as did bar security employee Charles Cooper.

## PROCEDURAL BACKGROUND

After bifurcation of allegations of a criminal threat strike prior, a criminal threat prison term prior, and a receiving stolen property prison term prior, a jury found Urbano guilty of assault by means likely to produce great bodily injury and found true both a criminal street gang allegation and a personal infliction of great bodily injury allegation. (§§ 186.22, subd. (b)(1), 245, subd. (a)(1), 422, 496, 667, subds. (b)–(i), 667.5, subd. (b), 1170.12, subds. (a)–(d), 12022.7, subd. (a).)[1] He admitted the strike prior allegation and both prison term prior allegations. (§§ 422, 496, 667, subds. (b)–(i), 667.5, subd. (b), 1170.12, subds. (a)–(d).) After denying Urbano's motions to strike his strike prior and his criminal street gang enhancement, the court imposed an aggregate 19-year sentence—a double-the-middle-term six-year term on the assault, a 10-year term on the criminal street gang enhancement, and a three-year term on the great bodily injury enhancement—and imposed an additional restitution fine and an additional parole revocation restitution fine of $3,800 each. (§§ 186.22, subd. (b)(1)(C), 245, subd. (a)(1), 667, subds. (b)–(i), 667.5, subd. (c)(8), 1170.12, subds. (a)–(d), 1202.4, subd. (b), 1202.45, 12022.7, subd. (a).)

## DISCUSSION

1. *Admissibility of Courtroom Comment and Conduct*

Urbano argues that the admission in evidence at trial of a comment and a gesture he made to his attorney in the jury box of his preliminary hearing courtroom when court was not in session violated the attorney-client privilege. The Attorney General argues the attorney-client privilege is inapplicable.

[1] All statutory references not otherwise noted are to the Penal Code.

Before making the ruling at issue here, the court ruled inadmissible on the ground of attorney-client privilege a comment Urbano made while talking with his attorney at counsel table while an eyewitness was testifying against him at his preliminary hearing. As the rationale of that ruling informs our analysis of the ruling at issue here, we begin by setting out the circumstances of the comment the court ruled inadmissible. At a colloquy among the court and counsel on pending motions in limine, the prosecutor represented that Urbano was at counsel table and Ramsey was on the stand testifying at Urbano's preliminary hearing when Urbano said something like "he couldn't see that, he was drunk." The court deferred to a pretrial Evidence Code section 402, subdivision (b) hearing (402(b) hearing) a ruling on the admissibility of his comment.

At the 402(b) hearing, Jesse Ruelas, the prosecutor's investigating officer, testified that Urbano said from counsel table at his preliminary hearing something like "that dude don't remember shit, he was drunk," or "could not be telling the truth, because he was drunk at that time," or "can't remember anything because he was drunk." Ruelas heard his comment from where he sat on the far side of counsel table for the prosecution from counsel table for the defense. Urbano spoke loudly enough that Ruelas thought Urbano was not trying to keep his comment secret.

The next witness at the 402(b) hearing was Urbano. He testified that during his preliminary hearing he and his attorney were talking quite a bit. After Ramsey testified he drank beer on the evening in question, Urbano made a comment that he considered part of his communication with his attorney: "It's like why do you guys even believe him if he is drunk?" He admitted he had "no idea" how loudly he spoke: "Probably just came out of the top of my mouth and you guys overheard it."

On the basis of Ruelas's and Urbano's testimonies at the 402(b) hearing, the court ruled his comment inadmissible as within the scope of the attorney-client privilege. The court stated, "[I]t is inherently necessary if counsel are to communicate with their clients, and vice versa, during court proceedings that they be able to do so without fear that should they raise their voice[s] unnecessarily that those statements intended to be communications from counsel could be used against them."

The incident at issue here, on the other hand, involved a comment and a gesture that Urbano made in the jury box of his preliminary hearing courtroom when court was not in session. After learning about the incident shortly before Green testified, the prosecutor made an offer of proof "not necessarily inconsistent" with Ruelas's and Urbano's testimonies at the 402(b) hearing since Green was not in the courtroom during the preliminary hearing except for when he himself was testifying. The court promptly held a hearing at which Green was the sole witness.

At the hearing, Green testified that after arriving at the courtroom for Urbano's preliminary hearing he sat down in the middle of the row of seats closest to the back of the courtroom. Ramsey was sitting in the same row of seats. Urbano was sitting in the jury box. The judge was not yet on the bench. Green saw the prosecutor hand to Urbano's attorney a photo lineup card that he took with him to show to Urbano in the jury box.[2] As Urbano and his attorney conversed while sitting next to each other in the jury box, Green saw Urbano "become very exorcised," point to the area of the audience where Ramsey was sitting, and say, "[T]hat guy was drunk." At the time of Urbano's outburst, lawyers were engaged in conversation throughout the courtroom.

Urbano argues the attorney-client privilege is applicable since his intent to communicate confidentially with his attorney controls. *In re Jordan* (1972) 7 Cal.3d 930 [103 Cal.Rptr. 849, 500 P.2d 873] (*Jordan*) and *City and County of San Francisco v. Superior Court* (1951) 37 Cal.2d 227 [231 P.2d 26] (*City and County*) are representative of the cases on which he relies. In *Jordan*, the Supreme Court invalidated department of corrections rules permitting inspection of inmate attorney-client correspondence by applying the established "general principle that a prisoner has a right to consult with his [or her] attorney in absolute privacy." (*Jordan, supra,* at pp. 932–933, 941.) In *City and County*, the Supreme Court refused to compel a physician to testify to a medical examination he performed solely as an agent for communication between an attorney and his client. (*City and County, supra,* at pp. 230–231.) In those cases, the client had no option to avoid disclosure to a third person of the attorney-client communication at issue.

■ The party claiming the attorney-client privilege has the burden of proof before the court as the trier of fact. (*San Diego Professional Assn. v. Superior Court* (1962) 58 Cal.2d 194, 199 [23 Cal.Rptr. 384, 373 P.2d 448]; see Evid. Code, §§ 310, subd. (a), 405, subd. (a).) Here, the court found that

---

[2] Green was intimately familiar with photo lineup cards, having seen thousands in his 25 years of experience as a criminal defense attorney.

Urbano had no need to speak in a voice "loud enough for individuals in the audience to hear," as his attorney was sitting right next to him in the jury box, but nevertheless made his communication in a way that "clearly disclose[d] it to third persons." On the basis of those circumstances, the court ruled Urbano's jury box comment and gesture admissible as outside the scope of the attorney-client privilege. Since the option to avoid disclosure to a third person of the attorney-client communication at issue *was* available to Urbano, *Jordan* and *Superior Court* are inapposite. ■ A case is not authority for a proposition the court did not consider. (*People v. Martinez* (2000) 22 Cal.4th 106, 118 [91 Cal.Rptr.2d 687, 990 P.2d 563].) Pursuant to the court's ruling, Green testified to the jury as a prosecution rebuttal witness on the issue of Urbano's identity as the perpetrator.

■ On appeal, the scope of judicial review of a court's finding of the existence or nonexistence of the attorney-client privilege is limited. " 'When the facts, or reasonable inferences from the facts, shown in support of or in opposition to the claim of privilege are in conflict, the determination of whether the evidence supports one conclusion or the other is for the trial court, and a reviewing court may not disturb such finding if there is any substantial evidence to support it [citations].' " (*People v. Gionis* (1995) 9 Cal.4th 1196, 1208 [40 Cal.Rptr.2d 456, 892 P.2d 1199].) Green's testimony to the jury constitutes the requisite substantial evidence.

■ Case law with origins as far back as the 19th century supports the court's ruling. In *Ruiz v. Dow* (1896) 113 Cal. 490 [45 P. 867], the Supreme Court held the attorney-client privilege inapplicable to a conversation a client and his attorney held in the presence of a third party. (*Id.* at p. 498.) In *People v. Castiel* (1957) 153 Cal.App.2d 653 [315 P.2d 79], the Court of Appeal held the attorney-client privilege inapplicable to a conversation a court reporter openly present during a recess overheard between the accused and his attorney. (*Id.* at p. 659; cf. *People v. Rittenhouse* (1922) 56 Cal.App. 541, 546 [206 P. 86].) ■ Since Urbano, sitting next to his attorney in the jury box when court was not in session and lawyers were engaged in conversation throughout the courtroom, spoke to his attorney loudly enough that Green, openly present in the last row of seats in the courtroom, overheard his comment and saw his gesture, we likewise hold the attorney-client privilege inapplicable.[3]

---

[3] In *People v. Poulin* (1972) 27 Cal.App.3d 54 [103 Cal.Rptr. 623], on which the court here relied, the Court of Appeal held the attorney-client privilege inapplicable where a bailiff testified to a comment the accused made at counsel table to his attorney—"It was not quite like that"—while a witness *testifying at trial* drew a diagram of a bomb that injured him. (*Id.* at pp. 59, 64–65.) Anomalously, *Poulin* is *contrary* to the ruling on the incident that is *not* before us and *inapposite* to the ruling on the incident that *is* before us. Our holding rests not on *Poulin* but on our analysis of the cases in the text.

## 2. Enhancements and Fines

Urbano argues that the court's denial without jury findings of his motions to strike his strike prior and his criminal street gang enhancement and the court's imposition without jury findings of an additional restitution fine and an additional parole revocation restitution fine violate *Blakely,* that the fines are constitutionally excessive, and that his attorney rendered ineffective assistance of counsel by failing to object. The Attorney General argues that Urbano forfeited his right to appellate review by failing to object and that in any event his claims have no merit.

■ Preliminarily, we address the Attorney General's forfeiture argument and Urbano's ineffective assistance argument. Assuming arguendo Urbano forfeited his right to appellate review by failing to object, nonetheless reviewing courts generally have discretion to consider on the merits issues a party has not preserved for review. (See *People v. Smith* (2003) 31 Cal.4th 1207, 1215 [7 Cal.Rptr.3d 559, 80 P.3d 662].) Since the sentencing issues before us involve neither the admission nor the exclusion of evidence, we have, and we choose to exercise, that discretion. (See *People v. Williams* (1998) 17 Cal.4th 148, 161–162 & fn. 6 [69 Cal.Rptr.2d 917, 948 P.2d 429].) The Attorney General's forfeiture argument and Urbano's ineffective assistance of counsel argument, then, are moot.

■ On the merits, we turn to the court's denial without jury findings of Urbano's motions to strike his strike prior and his criminal street gang enhancement. In *Apprendi v. New Jersey* (2000) 530 U.S. 466 [147 L.Ed.2d 435, 120 S.Ct. 2348] (*Apprendi*), the United States Supreme Court held: "Other than the fact of a prior conviction, any fact that *increases* the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (*Id.* at p. 490, italics added.) In *Blakely,* the high court applied *Apprendi* to reverse a state court's imposition of an "exceptional" sentence—one that was "more than three years beyond what the law allowed for the crime" to which the defendant had pled guilty—solely on the basis of a *judicial* finding that he had acted with "deliberate cruelty." (*Blakely, supra,* at pp. 298, 313 [159 L.Ed.2d at pp. 410, 420, 124 S.Ct. at pp. 2534, 2543].) Here, on the other hand, a jury found the criminal street gang allegation true, Urbano admitted the strike prior allegation, and through an exercise of judicial discretion the court simply chose not to *decrease* his sentence but instead to impose the presumptively "rational

and proper" sentence that the jury's finding and Urbano's admission had already authorized. (See *People v. Carmony* (2004) 33 Cal.4th 367, 378 [14 Cal.Rptr.3d 880, 92 P.3d 369]; § 1385.) *Blakely* is inapplicable.

Next, we turn to the court's imposition without jury findings of an additional restitution fine and an additional parole revocation restitution fine. The amount of the additional restitution fine, which is "at the discretion of the court and commensurate with the seriousness of the offense," requires no statement of formal reasons on the record. (§ 1202.4, subd. (b)(1); see *People v. Romero* (1985) 167 Cal.App.3d 1148, 1156 [213 Cal.Rptr. 774].) The court need not make express findings "as to the factors bearing on the amount of the fine" and need not hold a "separate hearing for the fine." (§ 1202.4, subd. (d).) Unless there are " 'compelling and extraordinary reasons,' " the defendant's "lack of assets" and "limited employment potential" are "not germane" to his or her ability to pay the fine. (*People v. McGhee* (1988) 197 Cal.App.3d 710, 715 [243 Cal.Rptr. 46]; cf. § 1202.4, subd. (c).) In the absence of a contrary showing, the court is entitled to presume the defendant will pay the restitution fine out of future earnings. (*People v. Frye* (1994) 21 Cal.App.4th 1483, 1486–1487 [27 Cal.Rptr.2d 52]; § 1202.4, subd. (d).)

Urbano tacitly acknowledges those facets of the law by focusing on the requirement that the amount of the fine "be supported by the record." (*People v. Romero, supra,* 167 Cal.App.3d at p. 1157.) Implicit in his argument, however, is the premise he has an entitlement to the minimum restitution fine authorized by statute in the absence of additional factual findings to the contrary. However, the holdings in *Blakely* and *Apprendi* do not apply when the exercise of judicial discretion stays within a sentencing range authorized by statute. (*United States v. Booker* (2005) 543 U.S. 220, 233 [160 L.Ed.2d 621, 643, 125 S.Ct. 738, 750], (maj. opn. of Stevens, J.); *id.* at pp. 277–278 [160 L.Ed.2d at pp. 671–672, 125 S.Ct. at pp. 775–776] (separate dis. opn. of Stevens, J.).) In *Apprendi,* after a thoughtful review of both common law and constitutional history, the high court noted that "nothing in this history suggests that it is impermissible for judges to exercise discretion—taking into consideration various factors relating both to offense and offender—in imposing a judgment *within the range* prescribed by statute." (*Apprendi, supra,* 530 U.S. at p. 481.) *Apprendi* distinguishes a "sentencing factor"—a "circumstance, which may be either aggravating or mitigating in character, that supports a specific sentence *within the range* authorized by the jury's finding that the defendant is guilty of a particular offense"—from a

"sentence enhancement"—"the functional equivalent of an element of a greater offense than the one covered by the jury's guilty verdict" constituting "an increase beyond the maximum authorized statutory sentence." (*Id.* at p. 494, fn. 19.)

In *Blakely,* on the basis of facts not found by the jury, the court imposed a sentence shorter than the indeterminate maximum for the offense but longer than the specific range the statute set for the offense. (*Blakely, supra,* 542 U.S. at pp. 303–305 [159 L.Ed.2d at pp. 413–414, 124 S.Ct. at pp. 2537–2538].) Here, on the other hand, just before setting $3,800 as the amount of Urbano's restitution fine, the court emphasized his crime was "not a bar fight" but instead "a willful act to inflict great bodily injury" in "a completely unprovoked attack" on Green "for purposes of promoting the Fresno Bulldog[s] Gang." As the probation officer's report noted, Urbano has a 1999 criminal threat prior that is a strike prior. (§§ 422, 667, subd. (d)(1), 1170.12, subd. (b)(1), 1192.7, subd. (c)(1)(38).) The permissive formula in the additional restitution fine statute suggests a court "may" impose a $3,800 fine on a defendant who, like Urbano, has a 19-year sentence on one felony count. (§ 1202.4, subd. (b)(2).) His $3,800 fine is within the range authorized by statute. (§ 1202.4, subd. (b)(1).)[4] *Blakely* is inapplicable.

 Finally, Urbano argues $3,800 constitutes a constitutionally excessive fine. (Cal. Const., art. I, § 17.) Within the range authorized by statute, the court has wide discretion in determining the amount. (See *People v. Gangemi* (1993) 13 Cal.App.4th 1790, 1798 [17 Cal.Rptr.2d 462]; cf. § 1202.4, subd. (b)(1).) "The touchstone of the constitutional inquiry under the Excessive Fines Clause is the principle of proportionality: The amount of the forfeiture must bear some relationship to the gravity of the offense that it is designed to punish. [Citations.] . . . [A] punitive forfeiture violates the Excessive Fines Clause if it is grossly disproportional to the gravity of a defendant's offense." (*United States v. Bajakajian* (1998) 524 U.S. 321, 334 [141 L.Ed.2d 314, 118 S.Ct. 2028]; *City and County of San Francisco v. Sainez* (2000) 77 Cal.App.4th 1302, 1321–1322 [92 Cal.Rptr.2d 418].) The record here of a completely unprovoked attack by a two-striker causing great bodily injury solely to promote a criminal street gang amply justifies the amount at issue. Urbano fails to show a constitutionally excessive fine.

---

[4] Since the law requires the court to impose an additional parole revocation fine "in the same amount as" the additional restitution fine, no independent issue arises as to the amount of the parole revocation fine. (§ 1202.45.)

## DISPOSITION

The judgment is affirmed.

Vartabedian, Acting P. J., and Cornell, J., concurred.

Appellant's petition for review by the Supreme Court was denied June 29, 2005. Brown, J., did not participate therein.