Filed 5/20/13  P. v. Murphy CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>MONRELL DONOVAN MURPHY,<br><br>    Defendant and Appellant. | B238006<br><br>(Los Angeles County<br>Super. Ct. No. MA053156) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Bernie C. LaForteza, Judge.  Affirmed.

Stephen M. Hinkle, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Susan Sullivan Pithey and Rene Judkiewicz, Deputy Attorneys General, for Plaintiff and Respondent.

_____

## INTRODUCTION

Defendant Monrell Donovan Murphy appeals from a judgment of conviction entered after a jury trial. Defendant was charged with two counts of second degree robbery (Pen. Code,[1] § 211) naming victims Abraham Gomez (Gomez) (count 1) and Juliana Anguiano (Anguiano) (count 3), and dissuading a witness from reporting a crime (§ 136.1, subd. (b)(1); count 4). As to counts 1 and 3, it was alleged that defendant suffered a prior serious felony conviction (§ 667, subd. (a)(1)) and, as to all three counts, it was alleged that defendant had suffered a prior conviction under the "Three Strikes" Law (§§ 667, subds. (b)-(i), 1170.12), and that he had served two prior prison terms within the meaning of section 667.5, subdivision (b).

Defendant was convicted of the two counts of second degree robbery, but found not guilty of dissuading a witness. The jury found true the prior conviction allegations.

Defendant was sentenced to 18 years in prison. In addition, the court ordered defendant to pay a $1,000 restitution fine under section 1202.4, subdivisions (b) through (f), and imposed and stayed a $1,000 parole revocation fine under section 1202.45.

On appeal, defendant contends the trial court improperly excluded the testimony of defendant's eyewitness identification expert, there was instructional error, and the restitution fine was improper. We affirm.

## FACTS

### A. *Prosecution*

In the middle of the night of June 16, 2011, sometime before 2:00 a.m., Gomez was working by himself in the back of a donut shop in Lancaster, making donuts. Defendant came in with another man. Defendant went to the back, grabbed Gomez by

---

[1] Unless otherwise specified, all further statutory references are to the Penal Code.

the neck, and brought him to the cash register. Defendant asked for money; the other man placed a handgun to Gomez's head. Gomez was unable to open the cash register and was struck behind his right ear with the gun. Defendant and the other man took the cash register and fled.

Gomez identified defendant from a photographic lineup. He also identified a surveillance video from the donut shop as depicting the incident.

On June 22, 2011, Anguiano was working at a Check and Go in Lancaster. Anguiano buzzed defendant through the front door. Defendant asked a few questions and then hopped over a counter and asked for money. Anguiano was scared and thought defendant had a weapon in his waist band. Anguiano felt she had no choice but to open the drawer with her key. Defendant took about $1,400 in cash and change, and checks from one drawer.

Defendant wiped down the drawers with the bottom of his T-shirt. When he was leaving, he told Anguiano, "Give me five minutes. Don't you call the cops. I'm going to come and get you."

Anguiano identified a surveillance video showing herself and defendant as depicting what happened that day. She also identified a photographic lineup from which she selected defendant's photo.

Detective Adam Zeko learned that Carlton Ewing (Ewing)[2] was a suspect in the donut shop robbery. When he located Ewing, he recovered a BB gun which Gomez later identified as the gun used in the robbery. Ewing also had in his possession a safe deposit key which had been in the donut shop's cash register.

Defendant's cell phone number was on Ewing's cell phone. When Detective Randy Megrdle called the number, a man who identified himself as "Monrell" answered the phone.

---

[2]  Ewing was also charged with the robbery in count 1.

**B.** *Defense*

Defendant, who represented himself at trial, called several witnesses, including Law Enforcement Technician Veronica Braun (Braun), Deputy Sheriff Bradley Feehan, Detective Richard Ellis, and Sergeant Craig Husbands.

Braun testified that on "January 16th," she was a custodian of evidence and could not remember defendant's case or the evidence.

Deputy Feehan testified that he assisted in investigating the June 16 incident. Detective Ellis testified that he showed Gomez a photographic six-pack. English was not Gomez's primary language and Detective Ellis spoke "some Spanish." Detective Ellis saw Gomez initial the six-pack and circle defendant's photograph.

Sergeant Husbands testified that he was the approving officer for most of the reports in defendant's case, but Detective Megrdle was in charge of the investigation.

Defendant testified that he has a brother a year older whose name is Montel. Although Montel was charged with the crime, somehow defendant "got involved." Defendant claimed that when both robberies were committed, he was at home, and when the donut shop robbery occurred, he was in bed asleep.

## DISCUSSION

**A.** *Exclusion of Eyewitness Identification Expert Testimony*

Defendant contends that the trial court improperly excluded the testimony of an eyewitness identification expert who was going to testify for defendant. The People assert that because defendant failed to raise his constitutional claim in the trial court, he has forfeited it. We reject defendant's contention.

A defendant may not complain on appeal that the exclusion of expert testimony under *McDonald*[3] violated his or her constitutional rights if the argument was not made

---

[3]    *People v. McDonald* (1984) 37 Cal.3d 351, overruled on other grounds in *People v. Mendoza* (2000) 23 Cal.4th 896, 914.

4

in the trial court.  (*People v. Sanders* (1995) 11 Cal.4th 475, 510, fn. 3.)  Defendant argues that the claim was not forfeited because he stated in his written motion that he had a federal due process right to an adequate defense.  Even assuming no forfeiture, defendant's claim lacks merit.

Only relevant evidence is admissible at trial.  (Evid. Code, § 350.)  Relevant evidence is that which has "any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action."  (*Id.*, § 210.)  The trial court has the duty to determine the relevance and thus the admissibility of evidence before it can be admitted.  (*Id.*, §§ 400, 402.)  The trial court is vested with wide discretion in performing this duty.  (*People v. Waidla* (2000) 22 Cal.4th 690, 717.)  We will not disturb the trial court's exercise of its discretion on appeal unless the court has abused its discretion (*ibid.*), i.e., if its decision exceeds the bounds of reason.  (*People v. DeSantis* (1992) 2 Cal.4th 1198, 1226.)

Expert opinion testimony is admissible if the subject matter of the testimony is "sufficiently beyond common experience that the opinion of an expert would assist the trier of fact."  (Evid. Code, § 801, subd. (a).)  Such testimony must be "[b]ased on matter (including his special knowledge, skill, experience, training, and education) perceived by or personally known to the witness or made known to him at or before the hearing, whether or not admissible, that is of a type that reasonably may be relied upon by an expert in forming an opinion upon the subject to which his testimony relates . . . ."  (*Id.*, subd. (b).)

*People v. McDonald*, *supra*, 37 Cal.3d 351 addresses the admissibility of expert opinion evidence on the subject of eyewitness identification.  It begins with the recognition that "'[t]he vagaries of eyewitness identification are well-known; the annals of criminal law are rife with instances of mistaken identification.' [Citation.]"  (*Id.* at p. 363.)  Eyewitness identification generally is given great credibility by the jury, but scientific studies have revealed a number of psychological factors affecting the accuracy of eyewitness identification.  (*Id.* at pp. 363-365.)  The *McDonald* court notes that courts have been reluctant to admit testimony by expert witnesses on the psychological factors

5

affecting the accuracy of eyewitness identification. (*Id*. at p. 365.) The question before it was whether that reluctance was justified. (*Ibid*.)

The court observes the requirement of Evidence Code section 801, subdivision (a), that expert opinion testimony address subjects "'sufficiently beyond common experience that the opinion of an expert would assist the trier of fact.'" (*People v. McDonald*, *supra*, 37 Cal.3d at p. 367, italics omitted.) As to whether the expert testimony at issue meets this requirement, the court notes "[i]t is doubtless true that from personal experience and intuition all jurors know that an eyewitness identification can be mistaken, and also know the more obvious factors that can affect its accuracy, such as lighting, distance, and duration. It appears from the professional literature, however, that other factors bearing on eyewitness identification may be known only to some jurors, or may be imperfectly understood by many, or may be contrary to the intuitive beliefs of most." (*Id*. at pp. 367-368, fn. omitted.) These factors include the cross-racial nature of the identification and the lack of correlation between the degree of confidence in an identification and the accuracy of that identification. (*Id*. at pp. 368-369.) Since some jurors may be "unaware of the foregoing psychological factors bearing on eyewitness identification, the body of information now available on these matters is 'sufficiently beyond common experience' that in appropriate cases expert opinion thereon could at least 'assist the trier of fact' (Evid. Code, § 801, subd. (a))." (*McDonald*, *supra*, at p. 369, fn. omitted.)

Defendant filed an ex parte motion for appointment of an eyewitness identification expert. On October 26, 2011, the court[4] denied defendant's request for appointment of an identification expert. In arguing the motion, defendant told the court, "I think the relevant point is the fact that the six-pack was administered to a non-English-speaking witness without the aid of an interpreter, with hand gestures; and impermissive communication was used." Defendant also noted that the admonishment was dated July

---

[4]     Judge Lisa Chung was the judge who ruled on defendant's eyewitness expert motion.

7, "some three weeks after the actual six-pack, which indicates that possibly the witness was not properly admonished as well."

The court examined one six-pack, and noted all the photographed individuals were African-American males with short-cropped hair. The court ruled, "I don't see anything here that shows it to be suggestive. They all appear to be . . . the same size, same features somewhat, although different individuals."

The court relied on *McDonald* in making its ruling. The court noted that it had "re-read the preliminary hearing transcript showing that there was a six-pack identification made on two different occasions, two different witnesses, both of which identify the defendant. There is reference, also, to a videotape of the incident. With regard to defendant's argument that . . . one of the witnesses was not assisted by an interpreter, I believe that is ripe for cross-examination and could be used by the defense to question the validity or the accuracy of the admonishments and the identification. . . . I don't think an expert is needed to say that . . . based on a noninterpreter, that the identification was tainted. . . . [I]f you don't have an individual who speaks English, you can raise that on cross-examination and argue that. That is not beyond the common experience."

The court further stated: "With regard to the admonishment and . . . with regard to the time difference, the length of time in terms of the time of the incident, the time of the six-pack identification, again, that is ripe for cross-examination for the defense. Again, I don't see why there is a need for an expert to testify that the length of time makes the identification not as accurate. Again, that is not beyond the common experience of anyone. This is ripe for argument. . . . The defense can argue that based on the time difference, that that is—that could taint the person's identification. So I don't see how an expert . . . would be relevant. Again, it doesn't meet the *McDonald* test, and there is substantial corroboration."

We find no error in the court's ruling on defendant's motion. The trial court instructed the jury on factors affecting the accuracy of eyewitness identifications,

7

specifically CALCRIM No. 315. The jury is presumed to have understood and followed the court's instructions. (*People v. Sanchez* (2001) 26 Cal.4th 834, 852.)

The facts that justified an eyewitness expert in *McDonald* were not present in the instant case. In *McDonald*, "the defense presented six witnesses who testified that [the] defendant was in another state on the day of the crime" and a prosecution witness testified "that [the] defendant was not the gunman." (*People v. McDonald*, *supra*, 37 Cal.3d at p. 355, italics omitted.) In the instant case, defendant did not have alibi witnesses to support a defense that he was not at the crime scenes. The prosecution presented strong evidence to support the eyewitness identifications. There were videotapes of both incidents. In an in-field show-up identification, Gomez recognized defendant's facial features, earring and shoes. Anguiano observed defendant in the daylight. Anguiano and Gomez each identified defendant immediately upon seeing his photograph and were sure that he was the gunman.

There was also independent evidence that tied defendant to the crimes. There were videotapes of both incidents. Ewing was tied to the robbery through the donut shop's cash register's safe deposit key in his possession, and defendant was tied to Ewing by his cell phone number on Ewing's cell phone. This evidence gave reliability to the eyewitness identifications.

## B. *Jury Instructions*

It is well established that the trial court has a duty to "instruct on lesser offenses necessarily included in the charged offense if there is substantial evidence the defendant is guilty only of the lesser. [Citation.] On the other hand, if there is no proof, other than an unexplainable rejection of the prosecution's evidence, that the offense was less than that charged, such instructions shall not be given. [Citation.]" (*People v. Kraft* (2000) 23 Cal.4th 978, 1063-1064.) An offense is a lesser necessarily included offense if the statutory elements of the greater offense include all of the elements of the lesser offense, so that the greater offense cannot be committed without also committing the lesser

8

offense.  (*People v. Birks* (1998) 19 Cal.4th 108, 117; see also *People v. Reed* (2006) 38 Cal.4th 1224, 1230-1231.)

Defendant contends that in the instant case, where the element of force or fear was not clearly established, the court had a sua sponte duty to instruct the jury that defendant could be convicted of grand theft person in count 3, as an alternative and a lesser included offense of robbery.  We disagree.

Section 211 defines "robbery" as "the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear."

Section 484, subdivision (a), defines "theft" as follows:  "Every person who shall feloniously steal, take, carry, lead, or drive away the personal property of another, or who shall fraudulently appropriate property which has been entrusted to him or her, or who shall knowingly and designedly, by any false or fraudulent representation or pretense, defraud any other person of money, labor or real or personal property, or who causes or procures others to report falsely of his or her wealth or mercantile character and by thus imposing upon any person, obtains credit and thereby fraudulently gets or obtains possession of money, or property or obtains the labor or service of another, is guilty of theft."

"'Theft,' as we have often held, 'is a lesser included offense of robbery . . . .' [Citations.]  Robbery comprises elements embracing the use of force or fear to effect a taking from the victim [citation] and also an intent to steal [citation] accompanying the use of such means [citation].  Theft comprises the same elements, including intent to steal, with the pertinent exception of the use of force or fear.  [Citation.]"  (*People v. Waidla*, *supra*, 22 Cal.4th at p. 737.)

We do not agree with defendant's contention that he did not take any action that posed a threat of an imminent unlawful injury as required for the robbery.  Anguiano testified that she was alone in a business that had a sizeable amount of cash.  Defendant hopped over the counter at the business and asked her for money.  Anguiano also testified that defendant approached her "like he had something" in his waistband, even though she

did not see anything. She reasonably thought that defendant would hit her if she didn't cooperate and believed she had no choice but to open the drawer and give defendant $1,400. Additionally, defendant threatened to come after her if she called the police.

The record before the trial court lacked substantial evidence that the offense was theft rather than robbery; there was no evidence the money was taken other than by force or fear. Therefore, the trial court had no sua sponte duty to instruct the jury on the lesser included offense of theft. (*People v. Jones* (1992) 2 Cal.App.4th 867, 871-872.)

## C. *Restitution Fine*

Defendant claims the amount of restitution imposed violates the constitutional requirement that the punishment imposed be based upon facts reflected in the jury's verdict. (*Blakely v. Washington* (2004) 542 U.S. 296 [124 S.Ct. 2531, 159 L.Ed.2d 403]; *Apprendi v. New Jersey* (2000) 530 U.S. 466, 490 [120 S.Ct. 2348, 147 L.Ed.2d 435].)

At the sentencing hearing, the trial court ordered defendant to pay a $1,000 restitution fine pursuant to section 1202.4, subdivisions (b) through (f), and a corresponding parole revocation fine (§ 1202.45), which was stayed pending revocation of parole. Initially, the People contend that because defendant did not object to the restitution fine, he forfeited his challenge to the fine amount. (*People v. Nelson* (2011) 51 Cal.4th 198, 227.) Defendant submits that the restitution order was an unauthorized sentence and may be corrected at any time by the appellate court. (*People v. Slattery* (2008) 167 Cal.App.4th 1091, 1095.) In addition, defendant cites a change in the law as evidenced by *S. Union Co. v. United States* (2012) ___ U.S. ___ [132 S.Ct. 2344, 183 L.Ed.2d 318] as a reason that the claim should not be considered forfeited. Regardless, we find defendant's claim is without merit.

At the time of sentencing, section 1202.4 provided, in pertinent part: "(b) In every case where a person is convicted of a crime, the court shall impose a separate and additional restitution fine, unless it finds compelling and extraordinary reasons for not doing so, and states those reasons on the record. [¶] (1) The restitution fine shall be set at the discretion of the court and commensurate with the seriousness of the offense, but

10

shall not be less than two hundred dollars ($200), and not more than ten thousand dollars ($10,000) . . . . [¶] . . . [¶] (d) In setting the amount of the fine pursuant to subdivision (b) in excess of the two hundred-dollar ($200) . . . minimum, the court shall consider any relevant factors, including . . . the defendant's inability to pay . . . . Consideration of a defendant's inability to pay may include his or her future earning capacity. A defendant shall bear the burden of demonstrating his or her inability to pay. Express findings by the court as to the factors bearing on the amount of the fine shall not be required. A separate hearing for the fine shall not be required."

Defendant's reliance on *S. Union Co.* for the proposition that the rule of *Apprendi* applied to his restitution fine is misplaced. In *S. Union Co.*, Southern Union Company was convicted of multiple counts of violating federal environmental statutes. At sentencing, the probation office set the fine at $38.1 million on the basis that Southern Union violated the Act for 762 days. Southern Union objected because the jury was not asked to determine the precise duration of the violation. (*S. Union Co. v. United States*, *supra*, ___ U.S. ___ [132 S.Ct. at pp. 2349].)

On appeal, the United States Supreme Court held that the tenets of common law criminal jurisprudence and the constitutional requirements of an accusation and trial by jury compel the conclusion that the jury must determine the facts that set the maximum amount of a criminal fine. (*S. Union Co. v. United States*, *supra*, ___ U.S. ___ [132 S.Ct. at pp. 2353-2355].) The court found no basis under *Apprendi* for treating criminal fines differently than other findings made by the jury.

Defendant contends that the case of *People v. Kramis* (2012) 209 Cal.App.4th 346, 351, review denied December 12, 2012, which held that *S. Union Co.* "does not impact the restitution fine imposed" under section 1202.4, was wrongly decided. We disagree. In *Kramis*, the court explained: "*Apprendi* and [*S.*] *Union Co.* do not apply when, as here, the trial court exercises its discretion within a statutory range. [Citations.] As the United States Supreme Court held in *Apprendi*, '[N]othing in [the common law and constitutional history] suggests that it is impermissible for judges to exercise discretion— taking into consideration various factors relating both to the offense and offender—in

11

imposing a judgment within the range prescribed by statute.' [Citations.] . . . '*Apprendi* distinguishes a "sentencing factor"—a "circumstance, which may be either aggravating or mitigating in character, that supports a specific sentence within the range authorized by the jury's finding that the defendant is guilty of a particular offense"—from a "sentence enhancement"—"the functional equivalent of an element of a greater offense than the one covered by the jury's guilty verdict" constituting "an increase beyond the maximum authorized statutory sentence." [Citation.]' [Citation.] Nothing in [*S.*] *Union Co.* alters that holding. Under the applicable version of section 1202.4, subdivision (b)(1), absent compelling and extraordinary circumstances, the trial court was required to impose a restitution fine in an amount between $200 and $10,000." (*Kramis*, *supra*, at p. 351, italics omitted.)

The $1,000 fine imposed on defendant was within the statutory range of $200 to $10,000. Hence, there was no *Apprendi* violation. (*People v. Kramis*, *supra*, 209 Cal.App.4th at p. 351.)

Moreover, under section 1202.4, an appropriate fine is $200 multiplied by the number of years of imprisonment to which the defendant is sentenced. (Subd. (b)(2).) Defendant was sentenced to 18 years in prison, and thus could have been given a $3,600 restitution fine. The $1,000 restitution fine imposed was presumptively appropriate, and the trial court did not abuse its discretion (*People v. Urbano* (2005) 128 Cal.App.4th 396, 405) in setting it at that amount.

## DISPOSITION

The judgment is affirmed.

JACKSON, J.

We concur:

WOODS, Acting P. J.

ZELON, J.