Filed 12/30/13  P. v. Gold CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sutter)

|  |  |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>MICHAEL SHAINE DWAYNE GOLD,<br><br>Defendant and Appellant. | C070611<br><br>(Super. Ct. No. CRF101157) |

A jury found defendant Michael Shaine Dwayne Gold guilty of the first degree murder of his stepfather Elmer Eugene McDonald (Pen. Code, § 187, subd. (a))[1] and found true the special circumstance allegation that he perpetrated the murder by means of lying in wait (§ 190.2, subd. (a)(15)).  The trial court sentenced defendant to life in prison without the possibility of parole and imposed a $7,000 restitution fine.

---

[1]  Further undesignated statutory references are to the Penal Code.

Defendant appeals, contending "[t]he special circumstance should be set aside because it is not clear that the jury made a true finding." He also asserts "[t]he restitution fine should be reduced to $200 because of the absence of jury findings."

We shall conclude defendant forfeited both contentions by failing to raise them below, and in any event, the contentions lack merit. Accordingly, we shall affirm the judgment.

## FACTUAL BACKGROUND

A detailed recitation of the facts is not required in light of the issues raised on appeal and our resolution of the same. Suffice it to say that substantial evidence was presented at trial that in November 2009, defendant slit his stepfather's throat, dismembered his stepfather's body, and attempted to dispose of the body parts in and around the Feather River.

## DISCUSSION

### I
### The Jury Found the Lying in Wait Special Circumstance to Be True

Defendant contends that because the term "special circumstance" was not used in the verdict form, "on its face this verdict does not reflect that the jury found true the alleged special circumstance of lying in wait." He further asserts that the defect in the verdict form was not cured by the jury instructions and was exacerbated by the prosecutor's argument. We disagree.

The verdict form signed by the jury foreman reads in pertinent part:

"We, the jury, . . . find the Defendant **GUILTY** of . . . murder in the first degree, in that the killing was willful, deliberate, and premeditated or perpetrated by means of lying in wait, as charged in Count One of the information.

"We, the jury, do further __unanimously__ find that the murder was perpetrated by means of lying in wait."

2

As a preliminary matter, defendant forfeited this contention by agreeing that the verdict form was adequate and failing to object when the jury's verdict and finding were announced. (*People v. Jones* (2003) 29 Cal.4th 1229, 1259 (*Jones*).) In any event, the contention fails on the merits.

" ' "[T]echnical defects in a verdict may be disregarded if the jury's intent to convict of a specified offense within the charges is unmistakably clear, and the accused's substantial rights suffered no prejudice. [Citations.]" ' " (*Jones, supra,* 29 Cal.4th at p. 1259.) Here, we need not decide whether the verdict form is technically deficient because the jury's intent to find true the lying in wait special circumstance is unmistakably clear when considered in the context of the court's instructions and the prosecutor's argument.

The jury was instructed in the language of CALCRIM No. 521 in pertinent part as follows: "The defendant has been prosecuted for first degree murder under two theories. One, the murder was willful, deliberate and premeditated; and, two, the murder was committed by lying in wait. . . . [¶] You may not find the defendant guilty of first degree murder unless all of you agree that the People have proved that the defendant committed murder, but all of you do not need to agree on the same theory." The jury further was instructed in the language of CALCRIM No. 700 in pertinent part as follows: "*If you find the defendant guilty of first degree murder, you must also decide whether the People have proved that the special circumstance is true.* . . . In order for you to return a finding that a special circumstance is or is not true, all 12 of you must agree." (Italics added.)

In his closing argument, the prosecutor reiterated that "[t]here are two separate theories in this case as to why it's first degree murder rather than second degree murder." After going through each of the theories, the prosecutor explained that "when you are deciding whether it's first or second degree murder you do not have to all agree on the theory that makes it first degree murder. Okay? This is the only place where you do not have to be unanimous in your agreement. . . . [T]hree of you can say 'Well, I think it was

3

willful, deliberate and premeditated but I'm not convinced that it was lying in wait.' The other nine can say 'It's lying in wait, but I don't know about this willful, deliberate and premeditated stuff.' If that were to happen, you can still return a verdict of first degree murder as long as you were all convinced beyond a reasonable doubt, all unanimous that there was murder and all of you believe at least one theory that supported first degree murder. It just doesn't have to be the same one. That could be kind of confusing and I hope I explained that to you." Immediately thereafter, the prosecutor turned to the issue of the special circumstance, stating, "[I]f you are all unanimous that it was lying in wait but not willful, deliberate and premeditated, not worrying about that one, just lying in wait, if you are all convinced, all 12 of you agree that that theory applies in this case, we need to know that and there's a place on the verdict form for you to indicate that you unanimously agreed on that." The prosecutor concluded shortly thereafter, telling the jury, "The evidence in this case compels a verdict of guilty to the charge of first degree murder and a true finding of the special circumstance that the murder was committed by lying in wait."

On this record, there is no doubt that the jury intended to find true the lying in wait special circumstance allegation. Based on the court's instructions and the prosecutor's argument, the jury would have understood that the lying in wait special circumstance was distinct from the lying in wait theory of murder. Specifically, the jury would have understood that it first had to decide whether defendant was guilty of first degree murder as charged in count one and did not have to agree on the theory of murder, and if it found defendant guilty of first degree murder, it was then required to make a separate finding on lying in wait special circumstance. The two paragraphs in the verdict form reflected this two-part analysis. Accordingly, there is no indication that defendant suffered any prejudice as a result of the alleged flaw in the verdict form. (*Jones*, *supra*, 29 Cal.4th at p. 1259.)

4

II

The Trial Court Did Not Err in Imposing a $7,000 Restitution Fine

The probation report recommended a restitution fine in the amount of $10,000 pursuant to section 1202.4. At sentencing, defendant requested the trial court order restitution in an amount less than $10,000 based on hardship. In response to defendant's request, the trial court imposed a $7,000 restitution fine.

Defendant contends the trial court could not impose more than the statutory minimum fine of $200, in the absence of jury findings authorizing a higher fine. In support of this contention, he relies on *Apprendi v. New Jersey* (2000) 530 U.S. 466 [147 L.Ed.2d 435] (*Apprendi*) and *Southern Union Co. v. United States* (2012) 567 U.S. ___ [183 L.Ed.2d 318] (*Southern Union*).

At sentencing, defense counsel "ask[ed] the Court to order a fine less than [the recommended $10,000] restitution fine based upon hardship . . . ." He did not, however, claim that the minimum fine was compelled. Accordingly, the point now raised is forfeited for lack of objection in the trial court. (See *People v. Gamache* (2010) 48 Cal.4th 347, 409.)

Moreover, *People v. Kramis* (2012) 209 Cal.App.4th 346 (*Kramis*), rejected the claim that *Apprendi* and *Southern Union* had any effect on a trial court's discretion to select an appropriate fine between $200 and $10,000, because those cases "do not apply when, as here, the trial court exercises its discretion within a statutory range." (*Kramis*, *supra*, 209 Cal.App.4th at p. 351.) We agree. (See also *People v. Urbano* (2005) 128 Cal.App.4th 396, 405-406 [defendant presumptively able to pay fine out of future earnings; *Apprendi* does not require jury findings on amount of fine]; *People v. Frye* (1994) 21 Cal.App.4th 1483, 1487 [absent objection "the trial court could presume the fine would be paid out of defendant's prison wages"].) In *Kramis*, the trial court imposed a $10,000 fine. Here, the court imposed a "mitigate[d]" fine of $7,000.

The trial court did not err in imposing a $7,000 restitution fine.

DISPOSITION

The judgment is affirmed.

                                                         BLEASE             , J.

We concur:

      RAYE             , P. J.

      BUTZ              , J.