Filed 8/7/24  P. v. Thompson CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>ANTHONY THOMPSON,<br><br>     Defendant and Appellant. | B331835<br><br>(Los Angeles County<br>Super. Ct. No. PA023193) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Hilleri G. Merritt, Judge.  Affirmed.

Lise M. Breakey, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Amanda V. Lopez and Analee J. Brodie, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Anthony Thompson, who is serving a long prison term, appeals from an order partially denying his petition for resentencing pursuant to the recently amended Penal Code sections 1172.75 and 1385.[1]  We affirm.

## BACKGROUND

### A.    Current Felony Conviction

#### 1.    Residential Burglary

On November 12, 1994, Thompson, age 28, entered a dwelling inhabited by Janet Doering, age 60, with the intention of stealing from her.  He ransacked several areas of her home while she was in her bed, stole $54 from her purse, and fled after she called 911.  Doering was distraught by the burglary and suffered a fatal heart attack while talking to responding officers.

Thompson was arrested nearby with Doering's money in his possession, but the district attorney's office at first declined to file charges pending further investigation involving fingerprint and shoe print analysis.

In the meantime, Thompson robbed another home in March of 1995, and in Los Angeles Superior Court Case No. BA114822 was convicted of residential robbery and sentenced to a base term

---

[1] Undesignated statutory references are to the Penal Code.

of four years in prison plus a consecutive enhancement of five years.

### 2. Charges

In 1996, the District Attorney of the County of Los Angeles charged Thompson in a twice-amended information with the murder of Doering and residential burglary.

#### a. One-Year Enhancement Allegations

The district attorney alleged that Thompson suffered felony convictions in 1988 and 1990 within the meaning of subdivision (b) of section 667.5, which at the time provided a one-year sentence enhancement for someone who failed to remain free of a conviction or prison custody for "any felony" for a period of five years prior to the conviction of the current offense.

#### b. Five-Year Enhancement Allegations

The district attorney further alleged that Thompson's 1990 conviction and a conviction in 1993 were for serious or violent felonies within the meaning of subdivision (a)(1) of section 667, which provides a five-year sentence enhancement for each such conviction.

#### c. Strike Allegations

Finally, the district attorney alleged that Thompson's 1990 and 1993 convictions constituted strikes for purposes of the "Three Strikes" law.

### 3. Verdict and Sentencing

A jury deadlocked on the murder charge, which the People thereafter dismissed, but found Thompson guilty of residential burglary and found the prior convictions allegations true.

The court sentenced Thompson to 25 years to life under the Three Strikes law plus five years each for the 1990 and 1993 serious felony convictions. The court added one concurrent year

each for the 1988 and 1990 prison priors but stayed the enhancement as to the 1990 prior because it was duplicative of the five-year enhancement already imposed for the 1990 conviction.  (§ 664.)

Thompson's sentence totaled 35 years to life (including a concurrent one-year enhancement pursuant to subdivision (b) of section 667.5), consecutive to the four-year base term in Case No. BA114822.

## B.    Resentencing

In 2020, the Legislature changed the scope of the one-year enhancement prescribed by subdivision (b) of section 667.5, narrowing its applicability from a current conviction for "any felony" to a conviction for a "sexually violent offense."  (*People v. Mayberry* (2024) 102 Cal.App.5th 665, 669.)  In 2022, the Legislature declared that any enhancement under subdivision (b) of section 667.5 imposed before 2020 for a non-sexually violent offense was invalid, and prescribed a resentencing procedure pursuant to which an inmate serving a now-invalid sentence could obtain complete resentencing.  (§ 1172.75, subd. (a), added by Stats. 2021, ch. 728, § 3.)  The Legislature also gave trial courts discretion to strike five-year enhancements for prior serious felony convictions.  (*Ibid*.)

In 2022 and 2023, Thompson filed three petitions for resentencing, seeking dismissal of the one-year and five-year enhancements and vacation of the findings that his 1990 and 1993 convictions constituted strikes.  The People filed no formal opposition, but at the hearing opposed vacating the five-year enhancements and strike findings.

Further facts came out at the June 15, 2023 resentencing hearing.  By the time Thompson was sentenced in 1996, he had

4

committed three offenses as a juvenile (two in 1981 and another in 1983), and seven crimes as an adult: a drug offense in 1986, burglary in 1987, battery with serious bodily injury in 1990, burglary in 1993, tampering with a vehicle in 1994, and first degree robbery and first degree burglary in 1995. In the 1995 residential robbery case, which occurred a few months after the burglary of Ms. Doering's home, Thompson entered the residence of a 71-year-old woman at 9:30 p.m., ransacked her bedroom, then woke her up with a hand over her mouth, threatened to kill her if she moved, and demanded to know where her purse was. The victim fought back, resulting in injuries to both parties. Thompson took about $2,000 in jewelry.

Thompson's counsel presented evidence that although early into his incarceration he was written up for minor infractions, he had a clean record over the past nine years in prison and he had completed his GED and programs in anger management, domestic violence prevention, victims awareness, life skills, addictive behavior, addiction recovery, and peer health. Counsel argued that Thompson had had no positive influences as a child and young man, and although 28 years old when he committed the instant burglary, was developmentally immature. Counsel presented several letters indicating Thompson had a support system outside prison, and argued he was able and eager to demonstrate he was not the same person who committed serious crimes almost thirty years prior.

The resentencing court applauded Thompson for his efforts and discussed relevant changes in sentencing law since his conviction. It observed, "Now many things have changed the way we look at things (since the original *Romero* motion in 1996), aggravating factors, mitigating factors . . . ." The court stated it "need[ed] to look at Mr. Thompson as a whole person, not just

5

numbers on a page," and noted there were "a lot of mitigating factors since that 19[9]6 *Romero* motion. [Section] 1385 has changed significantly since then and I think that the court has to look at what he has done since then." Ultimately, the court concluded that Thompson's efforts and changes in the law merited dismissal of the sentence enhancements but not the two strike findings.

Accordingly, the court dismissed the one- and five-year sentence enhancements but declined to vacate the strike findings. The resulting sentence was 25 years to life, of which Thompson had already served 28 years.

## DISCUSSION

Thompson contends the resentencing court abused its discretion in declining to vacate the strike findings either in the furtherance of justice pursuant to section 1385 or as a matter of recent legislative mandate. (Neither Thompson nor Respondent contests the court's dismissal of the one- and five-year sentence enhancements.)

I. **Vacating Strike Findings in the Furtherance of Justice**

A. **Legal Principles**

As noted, in 2020 and 2022 the Legislature changed the law regarding sentencing enhancements, invalidating the one-year section 667.5, subdivision (b) enhancement except for sexually violent offenses and giving trial courts discretion to strike the five-year enhancements for prior serious felony convictions. (§ 1172.75, subd. (a).) Under the new regime, a prisoner whose judgment of conviction was final could obtain

6

retroactive resentencing because of the recent changes to the sentencing law.  (*Ibid.*)

Such resentencing is not limited merely to vacating now-invalid enhancements.  Instead, at resentencing "[t]he court shall apply the sentencing rules of the Judicial Council and apply any other changes in law that reduce sentences or provide for judicial discretion so as to eliminate disparity of sentences and to promote uniformity of sentencing.  [¶]  . . . The court may consider postconviction factors, including, but not limited to, the disciplinary record and record of rehabilitation of the defendant while incarcerated, evidence that reflects whether age, time served, and diminished physical condition, if any, have reduced the defendant's risk for future violence, and evidence that reflects that circumstances have changed since the original sentencing so that continued incarceration is no longer in the interest of justice."  (§ 1172.75, subd. (d)(2) & (3).)

In other words, an inmate who is entitled to retroactive resentencing because of recent changes to the sentencing law is entitled to a complete reexamination of his or her sentence.

Such a reexamination may include application of section 1385.

Under section 1385, subdivision (a) the trial court "may, . . . in furtherance of justice, order an action to be dismissed."  This authority includes the power to "strike or vacate an allegation or finding under the Three Strikes law that a defendant has previously been convicted of a serious and/or violent felony . . . ."  (*People v. Williams* (1998) 17 Cal.4th 148, 158.)

The "furtherance of justice" requires consideration of both the constitutional rights of the defendant and the interests of society represented by the prosecution.  (*People v. Orin* (1975) 13

7

Cal.3d 937, 945.)  Thus, in deciding whether to vacate a strike finding in the furtherance of justice, a trial court must consider the nature and circumstances of the present felonies as well as the prior serious felony convictions.  (*People v. Williams*, *supra*, 17 Cal.4th at p. 161.)  The court must further consider the particulars of the defendant's background, character, and prospects.  (*Ibid*.)  From this consideration, the court must decide whether the defendant "may be deemed" to be outside the "spirit, in whole or in part," of the Three Strikes law.  (*Ibid*.)

"[T]he spirit of the law is informed, guided, and limited by its letter, lest an unanchored spirit escape its legislative receptacle and take[s] on an unenacted shape.  [¶]  [T]he Three Strikes law expressly declares that its purpose is 'to ensure longer prison sentences and greater punishment for those who commit a felony and have been previously convicted of serious and/or violent felony offenses.' "  (*People v. Strong* (2001) 87 Cal.App.4th 328, 337.)

In other words, the spirit of the Three Strikes law is to punish recidivism.  Thus, only "extraordinary circumstances" may demonstrate that the life sentence imposed on a repeat criminal falls outside the spirit of the Three Strikes law.  (*People v. Anderson* (2019) 42 Cal.App.5th 780, 786.)  "At the very least, the reason for [vacating a strike finding] must be 'that which would motivate a reasonable judge.' "  (*People v. Orin*, *supra*, 13 Cal.3d at p. 945.)

### B.    Standard of Review

We review for abuse of discretion an order declining to vacate a strike finding in furtherance of justice pursuant to section 1385.  (*People v. Williams*, *supra*, 17 Cal.4th at p. 162.)  "This standard is deferential.  [Citations.]  But it is not empty."

(*Ibid*.)  The question is whether the ruling " 'falls outside the bounds of reason' under the applicable law and the relevant facts."  (*Ibid*.)  An appellant must demonstrate on appeal that the sentencing decision was irrational or arbitrary.  (*People v. Carmony* (2004) 33 Cal.4th 367, 375, 378.)  The Three Strikes law "creates a strong presumption that any sentence that conforms to these sentencing norms is both rational and proper."  (*Ibid*.)

### C.  Application

Here, Thompson committed three offenses as a juvenile and seven crimes as an adult, culminating in two residential burglaries, the former of which resulted in the distraught 60-year-old female victim suffering a fatal heart attack and the latter of which escalated to a robbery when Thompson held down the 71-year-old female victim and threatened to kill her.

Thompson committed no new crimes since 1996, but he has been incarcerated since that time, which significantly attenuates any mitigating value of the remoteness of his priors.  (*People v. Vasquez* (2021) 72 Cal.App.5th 374, 390.)  These circumstances alone support the resentencing court's conclusion that Thompson falls within the spirit of the Three Strikes laws, which is to limit the court's discretion in sentencing repeat offenders.  Little in the record suggests Thompson is not the sort of repeat offender encompassed within that spirit.

Thompson relies heavily on his success in prison:  He has obtained his GED and completed several classes, and he has friends outside prison and plans for the future.  The resentencing court acknowledged these efforts, even applauding Thompson's progress.  Thompson also emphasizes his relative youth when committing the instant felony and the lack of positive influences in his life.  He argues that he is has gained insight into the

9

crimes of his youth and is "much less likely—or able—at his age (57) to run the risks of even unintentionally harming others that he indulged as a young man."

But these circumstances fail to show that the resentencing court's decision was irrational or arbitrary. On the contrary, the court duly considered the nature and circumstances of the present felony as well as Thompson's prior serious felony convictions, and further considered the particulars of his background, character, and prospects before concluding Thompson falls within the spirit of the Three Strikes law. The court took special note that Thompson had chosen elderly victims for his crimes, and although he was now approaching an age where he may have a greater appreciation for the vulnerability of such victims, the court did not believe it appropriate to strike either of his priors.

This is exactly the procedure the California Supreme Court has prescribed. (*People v. Williams*, *supra*, 17 Cal.4th at p. 161.) The court weighed the proper aspects of Thompson's record, exercised its discretion to strike the five year enhancements for prior felonies, but exercised that same informed discretion in deciding not to strike either of the strike priors. Nothing indicates the court disregarded or undervalued any of the mitigating factors Thompson presented, and no principle or authority compelled it to draw any particular conclusion. The court's conclusion after duly weighing the circumstances of Thompson's felonies against the particulars of his background, character and prospects was thus an appropriate exercise of discretion.

Thompson argues that underlying felony sentencing is evolving to place more emphasis on rehabilitation than on

10

lengthy incarceration, and from these sentencing trends he contends it is clear that the definition of "the furtherance of justice" is changing, as are the relevant factors regarding what it means to be outside the spirit of the Three Strikes law.

This argument, made without citation to case authority, provides no basis for finding an abuse of discretion in this case.

At the resentencing hearing it was clear the trial court was aware of what it considered relevant changes in sentencing law since Thompson's conviction.

In any case, as Thompson concedes, in determining whether a particular defendant may be deemed outside the spirit of the Three Strikes law, the court must still consider the nature and circumstances of the present felony as well as the prior serious felony convictions. It was thus proper for the trial court to consider the "extremely aggravated" circumstances of Thompson's prior felony convictions, which included residential burglaries where one elderly victim died, and another was attacked.

But the trial court did not stop there. It also considered other factors such as Thompson's good conduct while in prison and evidence of his rehabilitation. Indeed, much of the hearing was taken up with the trial court's colloquy with counsel about such factors.

After considering all of these factors, the trial court exercised its discretion to strike the two five-year priors but not the prior strikes. To the extent Thompson invokes "changing and evolving" sentencing trends as a basis for us to reweigh the

evidence relevant to sentencing and reach a different conclusion, we decline to do so.

The resentencing court did not abuse its discretion in denying Thompson's petition to vacate the strike findings.

## II.  Senate Bill 81

Thompson argues that under recent amendments to section 1385, the resentencing court was required to vacate at least one strike finding.  We disagree.

Senate Bill No. 81 (2021–2022 Reg. Sess.) (Senate Bill 81), amended section 1385 "to guide sentencing courts in deciding whether to dismiss an enhancement.  [Citation]  Under new section 1385(c), a court 'shall dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute.' (§ 1385(c)(1).)  In deciding whether to strike the enhancement, 'the court shall consider and afford great weight to evidence . . . that any of [nine enumerated] mitigating circumstances . . . are present.'  [Fn.]  (§ 1385(c)(2).)  'Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety.' (*Ibid*.)  Alongside two of the enumerated circumstances, the Legislature included additional, mandatory language: when multiple enhancements are alleged, 'all enhancements beyond a single enhancement shall be dismissed' (§ 1385(c)(2)(B)), and when an enhancement could result in a sentence of over 20 years, 'the enhancement shall be dismissed' (§ 1385(c)(2)(C))." (*People v. McDowell* (2024) 99 Cal.App.5th 1147, 1152-1153.)

Whether Senate Bill 81 applies to Thompson's sentence is a question of statutory interpretation, which we review de novo.

(*People v. Tirado* (2022) 12 Cal.5th 688, 694.) " '[I]n construing a statute, a court [must] ascertain the intent of the Legislature so as to effectuate the purpose of the law.' [Citation.] In determining that intent, we first examine the words of the respective statutes: 'If there is no ambiguity in the language of the statute, "then the Legislature is presumed to have meant what it said, and the plain meaning of the language governs." ' " (*People v. Coronado* (1995) 12 Cal.4th 145, 151.) "If, however, the terms of a statute provide no definitive answer, then courts may resort to extrinsic sources, including the ostensible objects to be achieved and the legislative history." (*Ibid.*)

As noted above, section 1385, subdivision (c) now provides: "(1) Notwithstanding any other law, the court shall dismiss an *enhancement* if it is in the furtherance of justice to do so, except if dismissal of that *enhancement* is prohibited by any initiative statute." (Italics added.) Subdivision (c) of section 1385 thus expressly applies to the dismissal only of an "enhancement." (§ 1385, subd. (c)(1).)

Our appellate courts have routinely rejected the argument that the Three Strikes law constitutes an enhancement under section 1385, subdivision (c), concluding it is well established that the law is instead "an alternative sentencing scheme for the current offense." (*People v. Burke* (2023) 89 Cal.App.5th 237, 243; see also *People v. Dain* (2024) 99 Cal.App.5th 399, rev. granted May 29, 2024 (S283924) [Senate Bill 81 does not apply to prior strike convictions]; *People v. Olay* (2023) 98 Cal.App.5th 60, 67 [same]; *People v. McDowell* (2024) 99 Cal.App.5th 1147, 1155; *People v. Cota* (2023) 97 Cal.App.5th 318, 335.)

Thompson argues these cases were incorrectly decided, the meaning of the word "enhancement" is ambiguous, the legislative

history of Senate Bill 81 indicates it was meant to apply to both enhancements and alternative sentencing schemes, and the rule of lenity requires that we adopt a definition of the statute that favors him.

We disagree. " 'Ordinarily words used in a statute are presumed to be used in accordance with their established legal or technical meaning.' [Citation.] The term 'enhancement' has a well-established technical meaning in California law. [Citation.] 'A sentence enhancement is "an additional term of imprisonment added to the base term." ' [Citations.] It is equally well established that the Three Strikes law is not an enhancement; it is an alternative sentencing scheme for the current offense. [Citations.] We presume the Legislature was aware of, and acquiesced in, both this established judicial definition of enhancement and the distinction between an enhancement and an alternative sentencing scheme such as the Three Strikes law." (*People v. Burke, supra,* 89 Cal.App.5th at pp. 243-244.)

Because the term "enhancement" has a well-established technical meaning which we presume the Legislature accepted, the statutory language is clear and unambiguous. We therefore follow its plain meaning, and may not consult legislative history or the rule of lenity to give the term a different meaning. (*People v. Coronado, supra,* 12 Cal.4th at p. 151 [" 'courts will not "interpret away clear language in favor of an ambiguity that does not exist" ' "].) Accordingly, the resentencing court did not err in declining to vacate Thompson's strike findings pursuant to subdivision (c) of section 1385.

14

**DISPOSITION**

The judgment is affirmed.

NOT TO BE PUBLISHED


KELLEY, J.[*]

We concur:



ROTHSCHILD, P. J.



BENDIX, J.

---

[*] Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.